The Mutual Benefit Life Insurance Company *et al.* v. Calvin Huntington.

No. 9089.

1. Mortgage — *after transferring negotiable note secured by, original mortgagee no power to release.* The assignment and delivery of a negotiable promissory note before maturity operates as an assignment of a mortgage given as security for the payment of the note. After such transfer the original mortgagee has no power to release or discharge the lien of the mortgage, and a release made by him without authority will not affect the rights of the assignee.

2. ⸺ *partial release by assignee on margin of record is notice to subsequent mortgagees.* An assignee of a duly recorded mortgage is authorized to discharge the same by an entry on the margin of the record, acknowledging satisfaction of the mortgage, signed by himself in the presence of the register of deeds or his deputy, who shall subscribe the same as a witness. When an entry is so made, subsequent mortgagees must take notice thereof.

3. ⸺ *permanent improvements on land are subject to prior, though made with money borrowed from subsequent mortgagee.* Permanent improvements upon mortgaged land which become a part of the realty, whether placed there by the mortgagor or one claiming under him, inure to the benefit of the mortgagee; and subsequent mortgagees can only claim the surplus, if any remains, after the first mortgage lien is satisfied.

*Error from Bourbon District Court.*
*Hon. J. S. West, Judge.*

Modified.                                  Opinion Filed March 6, 1897.

On May 2, 1884, J. D. Hill executed and delivered to W. C. Gunn, E. D. Marr, Isaac Stadden, V. A. Wallace and B. F. Hepler his negotiable promissory note for $4,563, due May 2, 1885, and to secure the payment of the same he and his wife executed a mortgage upon 64 lots in the city of Fort Scott, including lots 2 and 3 in block No. 2 which are in controversy in this action. There was a stipulation to the effect that for every $75 paid, any lot designated by the pay-

or should be released from the lien of the mortgage.
Immediately after execution the mortgage was duly
recorded, and, afterward, on June 28, 1884, the note
was transferred to Calvin Huntington, and payment
thereof guaranteed by the payees.   Subsequently, a
number of the lots included in the mortgage were sold
by Hill, and, upon payments made, Huntington re-
leased and discharged of record nine of the mortgaged
lots.    These were released and discharged by receipt
entered on the margin of  the record in the presence
of the Register of Deeds, who subscribed the same as
a witness.    Five such entries were made on the mar-
gin of the record ; the first, January 27, 1885, the sec-
ond, July 11, 1885, the third, January 10, 1887, the
fourth, March 18, 1887, and the fifth, April 21, 1890.

On August 27, 1890, and while Huntington was ab-
sent from Fort Scott, the payees of the note,— other
than Hepler,—who had transferred the same to Hunt-
ington, undertook to release and discharge the mort-
gage lien upon lots 2 and 3 in block number 2 in the
Park Row addition.    And thereafter, on January 2,
1891, David M. Bye, who was then the owner of the lots
last mentioned, with his wife, mortgaged the same to
the Mutual Benefit Life Insurance Company to secure
the payment of a loan of $3,100 ; and also made an-
other mortgage to Angell Matthewson & Co. to secure
a loan of $620.    With the proceeds of these mortgage
loans Bye erected two dwelling houses on the lots in
question.    On January 20, 1892, Calvin Huntington
instituted foreclosure proceedings and sought to sub-
ject the two lots with the improvements thereon to
the lien of the mortgage which had been transferred to
him.    The Insurance Company and Angell Matthew-
son & Co. set up their mortgages, claiming that they
were superior to that of Huntington.    Upon the trial

a judgment was obtained by Huntington against J. D. Hill upon the note of $5,376.93. The Court also found that the release executed by the payees of the note after they had transferred it and the mortgage to Huntington, was null and void, and did not operate to discharge the lots from the lien of the Huntington mortgage. A decree was entered declaring the judgment of Huntington to be the first and superior lien upon the lots in question without regard to the improvements thereon. A finding was made that, subsequent to the making of the void release, houses had been erected upon the lots, and the mortgages of the Insurance Company and Angell Matthewson & Co. had been executed upon the lots in reliance upon the release. It was therefore decreed that these lots should be separately appraised without reference to the improvements thereon, and as vacant lots; and the amount of the appraisement should constitute the amount of the lien of Huntington's judgment upon each lot. The Insurance Company and Angell Matthewson & Co. were decreed to have liens upon these lots subject to the lien of Huntington for the appraised value thereof.

The Insurance Company and Angell Matthewson & Co. bring this proceeding, complaining of the ruling making their mortgages subject to that of Huntington. A cross-petition in error was filed by Huntington, complaining of the ruling of the Court in refusing to extend the lien of his judgment over the entire property described in the mortgage, and in limiting it to the appraised value of the property less the improvements thereon. It is further alleged that all of the property, including the improvements, will be required to discharge the mortgage debt.

*H. G. Webb* and *Clinton C. Caldwell,* for plaintiffs in error.

*E. F. Ware* and *W. H. Thompson,* for defendant in error.

JOHNSTON, J.   The release executed by some of the payees of the Hill note was ineffectual.   It was executed more than six years after the note and mortgage had been transferred by them to Huntington, and when they had no ownership in either the note or mortgage.   During this period Huntington held and owned the note, and had given evidence of his ownership of the mortgage by a number of releases, which had been duly entered on the public records.   The note was negotiable ; and it is well settled that, where such a note is secured by a mortgage, the note is the principal and the mortgage is the incident, and that an assignment of the note is an assignment of the mortgage.   No obligation rested upon Huntington to record his assignment in order to protect himself against the subsequent mortgagee.   As the mortgage was given to secure a negotiable note, it could be assigned by the mere indorsement or delivery of the note, and there was in fact no assignment to record. It has been expressly held that the *bona fide* holder of negotiable paper, transferred to him by indorsement thereon before maturity and secured by a real estate mortgage, need not record the assignment of the mortgage.   *Burhans v. Hutcheson,* 25 Kan. 625.

After assigning the note and mortgage, the mortgagees had no interest therein, and no power to release or discharge the lien of the mortgage ; and, being wholly without authority, the release executed by

**1. Mortgagee transferring note cannot release mortgage.** them cannot affect the rights of the assignee. When the plaintiffs in error found upon the record a mortgage securing a negotiable note, it was their duty to inquire whether the release was executed before or after the assignment and by persons having authority to do so. 1 Jones, Mortgages, § 814.

The statute recognizes the assignee as a proper party to release or discharge a mortgage lien, and provides that this may be done by an entry on the margin of the record, signed by him in the presence of the Register of Deeds or his deputy, who shall subscribe the same as a witness. ¶ 3889, Gen. Stat. 1889.

The transfer of the note and mortgage to Huntington appears to have been quite well known to those directly connected with the execution of the mortgages, and, in addition to that, there was the notice imparted by the releases entered by Huntington on the margin of the record. Five such entries were made at different times during a period of five years, the first on January 27, 1885, and the last on April 21, 1890.

These were made by one authorized by statute, and formally entered on the record as the law directs.

**2. Partial release on record by assignee, notice of assignment.** Second mortgagees cannot shut their eyes to record evidence of this character ; and, if notice of the assignment to the second mortgagees was necessary for the protection of Huntington, there appears to be sufficient testimony in the record to show such notice.

The attempt of the Court to limit the lien of Huntington to the unimproved land cannot be sustained. His mortgage covered the entire property described therein, and he was entitled to have the whole, or as

much of the security as was necessary, to satisfy the mortgage debt.    It is true that the improvements were made after the mortgage was executed, but they were structures of a permanent character which unquestionably became a part of the realty.    It is well settled that permanent accessions to a freehold, whether placed there by the mortgagor or one claiming under him, are regarded as a part of the mortgaged property, and become additional security for the mortgage debt. It is not claimed that anything was said or done by Huntington which would limit his lien, but the money appears to have been advanced and the mortgages taken, by the plaintiffs in error, upon the theory that Huntington's lien had been removed by the void release.    Under the circumstances, the improvements inured to the benefit of the first mortgagee, and the subsequent mortgagees can only claim the surplus, if any remains, after the first lien is satisfied.    10 Am. & Eng. Encyc. Law, 260 ; 1 Jones, Mortgages, § 147.

*3. Improvements subject to prior mortgage.*

We think that Huntington had the right to have the whole of the mortgaged premises subjected to the satisfaction of his debt, and therefore the judgment of the Court will be ·modified to this extent.    When so modified the judgment will be affirmed.

All the Justices· concurring.