Middlekauff v. Bell.

### No. 23,479.

NELLIE MIDDLEKAUFF, *Appellant,* v. S. B. BELL, Jr., et al. (HUGHES-PALMER INVESTMENT COMPANY et al., *Appellees.*)

#### SYLLABUS BY THE COURT.

NOTE AND MORTGAGE—*Note Indorsed—Mortgage Assigned—Assignment Not Recorded—Second Mortgage Executed—Priority of Liens.* In October, 1910, a mortgagor gave a real-estate mortgage to secure a negotiable promissory note for $2,000, due in six months, and the mortgage was duly recorded. In November, 1911, the note was indorsed and delivered, and the mortgage was assigned by written assignment, duly acknowledged, to the plaintiff. In 1914, the mortgagor offered the land to an investment company as security for a loan. An abstract of title disclosed the mortgage of 1910. The investment company inquired of the mortgagee, and was told the debt had been paid and a release would be executed. No release was executed, and the investment company closed the loan, taking as security a mortgage for $4,300. In an action to foreclose the plaintiff's mortgage, the investment company was awarded a first lien. *Held,* the judgment was erroneous.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed May 6, 1922. Reversed.

*Chester I. Long, Austin M. Cowan, Claude I. Depew, Forest D. Siefkin,* all of Wichita, *W. P. Morrison,* and *S. D. Scott,* both of Olathe, for the appellant.

*James F. Getty,* of Kansas City, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one by the assignee of a recorded real-estate mortgage to foreclose the mortgage. The judgment was that a subsequent mortgage, taken before the assignment was recorded, was a superior lien. The plaintiff appeals.

In October, 1910, Bell gave the Commercial State Bank a real-estate mortgage to secure a negotiable promissory note for $2,000, due in six months. The mortgage was recorded on October 29. On November 24, 1911, the note was indorsed and delivered, and the mortgage was assigned by written assignment, duly acknowledged, to the plaintiff. Bell had given a mortgage to Palmer on other property to secure an indebtedness of $3,000. In September, 1914, this indebtedness was renewed, delinquent interest and commissions were added, and Bell gave Palmer a mortgage on both tracts, to secure payment of the total sum of $4,300. An abstract of title dis-

closed the mortgage to the bank. Before taking his mortgage, Palmer made inquiry of the bank, and was told the mortgage was paid and would be released, but no release was executed. In 1916, Palmer's mortgage was foreclosed, in an action to which neither the bank nor the plaintiff was a party. The land was sold to Palmer, who assigned the certificate of purchase to the Hughes-Palmer Investment Company, and in December, 1917, a sheriff's deed was issued to the investment company. The evidence indicates that Palmer and the investment company represented a single interest. On January 3, 1918, the bank executed a release of the plaintiff's mortgage, which did not reach the record until February 26, 1918. On January 5, 1918, the plaintiff filed her assignment for record.

The general recording act provides for recording instruments affecting real estate, and provides that no instrument eligible to record shall be valid except as between the parties, and except as to those who have actual notice, until deposited for record. (Gen. Stat. 1915, §§ 2068, 2070.) In support of the judgment of the district court, it is contended these sections exclude from consideration the assignment from the bank to the plaintiff, and determine the controversy in favor of the investment company. An assignment of a mortgage is merely a formal transfer of title to the instrument, and the assignment from the bank to the plaintiff was admittedly good for that purpose. The plaintiff, however, did not need the assignment in order to invest her with ownership of the mortgage. She acquired full title by purchase of the note which it secured, and the assignment may be excluded from consideration without prejudice to her lien. The mortgage was recorded, was unreleased, and was notice of lien, nò matter who owned it; Palmer did not take his mortgage on faith in the record, but in opposition to the record; and instead of the sections referred to determining the controversy in favor of the investment company, another section of the general recording act, providing that recorded instruments, entitled to record, impart notice to subsequent mortgagees (Gen. Stat. 1915, § 2069), determines the controversy in favor of the plaintiff.

The recording of assignments has always been a matter of special legislative consideration, in connection with the general subject of real-estate mortgages. The chapter of the General Statutes of 1868 relating to mortgages contained the following provision:

"The recording of the assignment of a mortgage shall not be deemed, of itself, notice to a mortgagor, his heirs or personal representatives, so as to

invalidate any payment made by them, or either of them, to the mortgagee."
(Ch. 68, § 3.)

This provision was interpreted in the case of *Burhans v. Hutcheson*, 25 Kan. 625. The opinion reads:

"From the conclusions of law stated, the court must have decided that where a negotiable note is secured by mortgage on real estate, and both are assigned by indorsement thereon before maturity to a *bona fide* purchaser, the mortgage is taken subject to all payments made by the mortgagor to the mortgagee at any time before actual notice to the mortgagor of such assignment. Counsel for defendants claim this to be the law, and have cited many respectable authorities in support thereof. We think the doctrine thus announced not sustained by reason or sound policy, and if adopted it would be an unfortunate obstacle to commercial transactions so common in this state as the sale and transfer of negotiable paper secured by real-estate mortgages, and that such a doctrine is not in accord with the previous decisions of this court controlling the principles of law applicable to negotiable paper secured by such mortgages. In this state, the common-law attributes of mortgages have been by statute wholly set aside, and the ancient theories concerning such mortgages demolished. The mortgage is a mere security, creating a lien upon the property, but vesting no title. The debt secured by the mortgage is the principal thing, and the mortgage the mere incident following the debt wherever it goes, and deriving its character from the instrument which evidences the debt. Here, the negotiable notes are the principal evidence of the debt, and the mortgage is merely ancillary; the mortgage follows the notes; whoever owns the notes, owns the mortgage. . . .

"Section 3 speaks of the recording of the assignment of the mortgage, and does not by its terms refer to negotiable paper, and it seems to us a strained interpretation to hold its provisions applicable, where a debt is evidenced by a negotiable note, secured by mortgage upon real estate, when such mortgage is merely ancillary thereto, and follows the note wherever it goes, deriving its character from such instrument. A better interpretation, and one clearly more in accord with the law of mortgages in this state, is, that such section has reference only to a mortgage standing alone, or one securing debts and notes of a non-negotiable character." (pp. 629, 631.)

In the Burhans case the mortgagor had attempted to release the mortgage. In the case of *Lewis v. Kirk*, 28 Kan. 497, the question was one of priority between the assignee of a mortgage whose assignment was not recorded and a purchaser who took title relying on a release by the original mortgagee. It was held the innocent purchaser should be protected. In the opinion, which distinguished the Burhans case, it was said:

"If a mortgage has been executed by the owner of the property to secure the payment of a negotiable promissory note, and the mortgage has never been recorded, then we think a person who has no knowledge of the mortgage may purchase the property from the mortgagor freed from all liens or equities

created by the mortgage. Or, if the mortgage has been recorded and then has been regularly released on the margin of the record thereof by the mortgagee, then we think that any person, if he does it in good faith, may purchase the property in like manner freed from all liens and equities existing in favor of the holder of the mortgage; or in other words, and to state the proposition more succinctly, a purchaser in good faith of real estate may always rely upon the public records, subject only to the equities of persons in open, visible and exclusive possession of the property." (p. 505.)

In the case of *Insurance Co. v. Huntington*, 57 Kan. 744, 48 Pac. 19, the mortgagee released the mortgage after he had assigned it. The syllabus reads:

"The assignment and delivery of a negotiable promissory note before maturity operates as an assignment of a mortgage given as security for the payment of the note. After such transfer the original mortgagee has no power to release or discharge the lien of the mortgage, and a release made by him without authority will not affect the rights of the assignee." (¶ 1.)

In the opinion it was said:

"No obligation rested upon Huntington to record his assignment in order to protect himself against the subsequent mortgagee. As the mortgage was given to secure a negotiable note, it could be assigned by the mere indorsement or delivery of the note, and there was in fact no assignment to record. It has been expressly held that the *bona fide* holder of negotiable paper, transferred to him by indorsement thereon before maturity and secured by a real-estate mortgage, need not record the assignment of the mortgage. (*Burhans v. Hutcheson*, 25 Kan. 625.)

"After assigning the note and mortgage, the mortgagees had no interest therein, and no power to release or discharge the lien of the mortgage; and, being wholly without authority, the release executed by them cannot affect the rights of the assignee. When the plaintiffs in error found upon the record a mortgage securing a negotiable note, it was their duty to inquire whether the release was executed before or after the assignment and by persons having authority to do so." (p. 747.)

The Huntington case was decided in 1897, and in that year the legislature passed an act, the pertinent provisions of which may be summarized as follows: All assignments of real-estate mortgages thereafter made should be recorded within 90 days; no assignment of a mortgage should be received in evidence against the mortgagor unless recorded; no transfer of note or mortgage should be received in evidence against the mortgagor unless the mortgage had been assigned and the assignment recorded; a release by the last assignee of record should fully discharge the mortgage and cancel the debt as to the mortgagor. (Laws 1897, ch. 160.)

14—111 Kan.

In the case of *Burt v. Moore*, 62 Kan. 536, 64 Pac. 57, the statute was interpreted as follows:

"The only penalty prescribed in the act is that if an assignment is not acknowledged and recorded as therein provided, it shall not be received in evidence in any court of the state. It was not within the constitutional power of the legislature, nor did it attempt, to annul the mortgage or to destroy the mortgage lien. The mortgage continues in existence and remains enforceable notwithstanding the statute; and the lien and right to enforce the same may be established by any competent proof; . . . The failure to have the assignment acknowledged and recorded effectually bars its use as evidence, but when a case can be made out or is established without such evidence a judgment of foreclosure should be given." (p. 540.)

At the next regular session of the legislature, the act of 1897 was repealed, and the present law was enacted. It contains the following section:

"In cases where assignments of real-estate mortgages are made after the passage of this act, if such assignments are not recorded, the mortgagor, his heirs, personal representatives, or assigns, may pay all matured interest or the principal debt itself prior to the recording of such assignment to the mortgagee, or if an assignment of such mortgage has been made that duly appears of record, then such payment may be made to the last assignee whose assignment is recorded in accordance with the provisions of this act, and such payment shall be effectual to extinguish all claims against such mortgagor, his heirs, personal representatives, and assigns, for or on account of such interest or such principal indebtedness; and no transfer of any note, bond or other evidence of indebtedness, by indorsement or otherwise, where such indebtedness is secured by mortgage on real estate within this state, shall prevent or operate to defeat the defense of payment of such interest or principal by the mortgagor, his heirs, personal representatives, or assigns, where such payment has been made to the mortgagee or to the assignee whose assignment appears last of record under the provisions of this act: *Provided, however,* That in all such cases the assignee who may hold such unrecorded assignment shall have a right of action against his assignor to recover the amount of any such payment of interest or principal made to such assignor as upon an account for money had and received for the use of such assignee." (Laws 1899, ch. 168, § 3, Gen. Stat. 1915, § 6485.)

This statute was interpreted in the case of *Anthony v. Brennan,* 74 Kan. 707, 87 Pac. 1136. The syllabus reads:

"The act relating to the recording of assignments of mortgages (Laws 1899, ch. 168) does not restrict the methods by which a negotiable note and a mortgage securing it may be transferred, nor prevent a transfer of the ownership of such paper by mere delivery."

In the opinion it was said:

"That act does not undertake to limit the methods by which real-estate mortgages may be transferred, and it does not provide that the failure to make

Middlekauff v. Bell.

a record of an assignment of a mortgage shall invalidate the security of the transfer. It was intended as a protection to mortgagors, and the only penalty prescribed for not recording the transfer is that all payments made by the mortgagor to the mortgagee or to any one who appeared to be the owner shall be credited to the mortgagor, although the assignee never received such payments. This was the view taken of the statute in earlier cases." (p. 709.)

In the case of *Mayse v. Williams*, 77 Kan. 813, 91 Pac. 795, Brewer appeared on the record as assignee of a mortgage. Mayse procured from Brewer a release for which he paid $25. After procuring the release, Mayse obtained a quitclaim deed from the owner of the land. Brewer advised Mayse she could not find the note and mortgage, and she did not comply with his request to make an affidavit of ownership. In fact, Brewer had assigned to Williams, who had not recorded his assignment. In an action by Williams to foreclose the mortgage, the district court allowed Mayse $25, and entered the decree of foreclosure prayed for. Mayse appealed. In affirming the judgment the court said:

"Under chapter 160 of the Laws of 1897, requiring all such assignments to be recorded within ninety days after the transfer, and providing in express terms that a release executed to the last recorded assignee should discharge the mortgage, the release relied upon here would have been a complete defense to the action. But in 1899 that law was repealed and a new act, chapter 168 of the Laws of 1899 (Gen. Stat. 1901, §§ 4234-4239), enacted in its place. In the latter the provision that a release by the last assignee of record shall be effectual fully to discharge the mortgage is omitted. . . . Whatever the purpose of the legislature may have been, whether, as suggested, it believed the former provision hindered and impaired the usefulness of mortgage notes as security, it is clear that the provision was eliminated from the act of 1899, and nothing of the kind left in its place.

"Mayse was not a purchaser of the land in this transaction; he was attempting to secure a release and satisfaction of a mortgage from a person whom the evidence shows he had some reason to believe might not be the owner, with the expectation of afterward acquiring the title to the land free from the mortgage." (p. 814.)

Why the district court compelled the rightful holder of the mortgage to reimburse an outsider, who did not own the land or owe the debt, for his outlay in procuring an unauthorized release from a person who, he had reason to believe, did not own the mortgage, is not disclosed. The references to the subject in the cases of *Mayse v. Williams*, supra, and *Bullock v. Kendall*, 80 Kan. 791, 104 Pac. 568, are not to be taken as adjudications by this court.

The statutes of 1897 and 1899 were enacted at the ebbing of a tidal wave of farm mortgages which swept Kansas, and were not

enacted for the benefit of subsequent purchasers or mortgagees; the intention was to benefit mortgagors only. Even the savage statute of 1897 did not declare that failure to record an assignment of a recorded mortgage should give priority to a subsequent purchaser or mortgagee. Two years later the legislature again considered what penalty should be assessed against an assignee who omitted to record his assignment. It stopped with the provision that payments made by the mortgagor to the holder of record should be credited to the mortgagor, and there is no other penalty. One who acquires a negotiable note, secured by recorded mortgage, is not, as to subsequent purchasers or mortgagees, the possessor of a mere "secret equity," if no assignment of the mortgage be placed on record. Record of the mortgage is notice of its existence, and the holder is not obliged to disclose his ownership by recording his assignment in order to preserve priority of lien.

The result of the foregoing is that we must turn to *Lewis v. Kirk*, 28 Kan. 497, and *Insurance Co. v. Huntington*, 57 Kan. 744, 48 Pac. 19, already referred to, for principles on which to base a decision.

Taken literally, the language of the syllabus and opinion in the case of *Insurance Co. v. Huntington* would place the decision in conflict with that of *Lewis v. Kirk*, which was not referred to, would place the decision out of harmony with the great weight of authority, and would tend to embarrass rather than to facilitate commercial uses of negotiable mortgage securities. The difficulties encountered in securing conclusive proof that all releases by mortgagees had been made with authority, would be practically insuperable, but no new mortgage could safely be taken without such proof. Under the facts of the case, however, the decision was sound. The mortgage covered a number of city lots. The record disclosed that the mortgage was assignable by negotiation of the note it secured. Before the mortgagee released the lots in controversy, Huntington, as assignee, had made five releases on the margin of the record. Under these circumstances, it was properly held a purchaser should have inquired if the release of his lots "was executed before or after the assignment, and by persons having authority to do so."

In *Lewis v. Kirk*, the question was, Who should suffer from the fraud of the mortgagee in releasing the mortgage after he had sold the note which it secured—the innocent assignee of the note and mortgage, or the innocent purchaser of the land? The decision was,

Middlekauff v. Bell.

the purchaser might rely on the record showing the release; but the decision was equally emphatic that the record of the mortgage protected the assignee until the mortgage was paid, or was released by some one having authority to do so.

"But when the mortgage is recorded, its negotiable character is then extended even to *bona fide* purchasers of the property, and it retains such character contemporaneously with the existence of the note to which it is an incident until the note is satisfied, or until the mortgage is released of record by the mortgagee, or his attorney, assignee, or personal representative . . ." (p. 506.)

These rules, equally just to holders of negotiable real-estate securities and to purchasers of real estate, are settled rules of property in this state.

It is argued that the plaintiff, by omitting to record her assignment, placed it within the power of the bank to mislead the investment company, to its injury, and that, as a consequence, it would be inequitable for the plaintiff to prevail. The note to the bank was payable to its order, was copied in the mortgage, and the record of the mortgage warned the investment company that the paper was negotiable and might be the property of an assignee. There was no occasion for the investment company to depend on a report of payment based on an interpretation of the bank records. All it needed to do was to refrain from closing the loan until a release from the bank appeared on the public records, which constitute the standard source of information in such cases. Having been put on guard, the investment company elected to pursue an unsafe course instead of a safe one, and it has no standing in equity to charge the consequences of its conduct to the plaintiff.

In this instance, the note was transferred and the mortgage was assigned after maturity. That fact made the paper subject to any defense the maker might have against the payee of the note, but as long as a negotiable mortgage, duly recorded and not released, remains valid security for all or any part of the debt evidenced by the note, a subsequent purchaser or mortgagee takes subject to the assignee's lien. There was some evidence the assignment to the plaintiff was withheld from record for temporary accommodation of the bank. That fact is of no importance to one who purchased in the face of a record showing an unreleased mortgage.

The judgment of the district court is reversed, and the cause is remanded with direction to award the plaintiff a first lien, and to dispose of the case accordingly.