No. 23,831.

MARY ALLEN, *Appellant*, v. H. H. WADDLE, *Appellee*.

SYLLABUS BY THE COURT.

1. NOTE AND MORTGAGE—*Transferred—Unrecorded Assignment of Mortgage— Effect of Payment to Original Mortgagee—Statute Construed.* The statute authorizing effective payments upon a real-estate mortgage, title to which has been transferred by an unrecorded assignment, to be made by the mortgagor to the mortgagee, applies to mortgages securing negotiable as well as nonnegotiable obligations.

2. SAME. Where in a written application for a loan on a real-estate mortgage the applicant appoints the company to which it is addressed as his agent to receive and transmit funds in payment thereof, but the loan is actually made by the company, which later transfers the mortgage by an unrecorded assignment, such appointment will not deprive the mortgagor of the benefits of the statute authorizing him to make effective payments to the mortgagee.

3. SAME—*Negotiable Note—Coupons Indorsed in Blank—No Notice That Note and Mortgage Had Been Transferred.* The fact that the coupons of a mortgage note are indorsed in blank by the mortgagee at the time he delivers them to the mortgagor upon payment is not sufficient to charge the latter with notice of the title to the note having been transferred, there being no assignment on record.

4. SAME—*Evidence.* The admission of evidence complained of is held not to require a reversal.

5. SAME—*Assignment of Mortgage Not Recorded—Effect of Payments to Original Mortgagee.* Under the statute authorizing the payment to the mortgagee of "all matured interest or the principal debt itself" prior to the recording of an assignment, payments made by the mortgagor to the mortgagee and accepted by him upon the principal of a note which gives the right of making them at stated times upon 30 days' notice are not rendered ineffective against an assignee, whose assignment is not recorded, because made a little later than the times indicated and without the giving of notice in advance.

Appeal from Franklin district court; HUGH MEANS, judge. Opinion filed July 8, 1922. Affirmed.

*W. B. Pleasant*, of Ottawa, for the appellant; *M. Caswell Heine*, of Newark, N. J., *I. N. Watson, R. E. Watson, John B. Gage*, and *Henry N. Ess*, all of Kansas City, Mo., of counsel.

*F. M. Harris*, of Ottawa, for the appellee.

Allen v. Waddle.

The opinion of the court was delivered by

Mason, J.: In an action upon a negotiable note and real-estate mortgage securing it, the trial court held that the defendant (the mortgagor) was entitled to credit for payments made to and retained by the mortgagees after the note and mortgage had been assigned, because of the assignment not having been recorded. The plaintiff (the assignee) appeals from this ruling.

1. The defendant invokes the statute reading:

"In cases where assignments of real-estate mortgages are made after the passage of this act, if such assignments are not recorded, the mortgagor, his heirs, personal representatives, or assigns, may pay all matured interest or the principal debt itself prior to the recording of such assignment to the mortgagee, . . . and such payment shall be effectual to extinguish all claims against such mortgagor, his heirs, personal representatives, and assigns, for or on account of such interest or such principal indebtedness; and no transfer of any note, bond or other evidence of indebtedness, by indorsement or otherwise, where such indebtedness is secured by mortgage on real estate within this state, shall prevent or operate to defeat the defense of payment of such interest or principal by the mortgagor, his heirs, personal representatives, or assigns, where such payment has been made to the mortgagee or to the assignee whose assignment appears last of record under the provisions of this act." (Gen. Stat. 1915, § 6485.)

The plaintiff, Mary Allen, contends that the statute should be construed as applying only to mortgages securing nonnegotiable obligations. That interpretation has been given (*Burhans v. Hutcheson*, 25 Kan. 625) to a section of the mortgage act reading: "The recording of the assignment of a mortgage shall not be deemed of itself notice to a mortgagor, his heirs or personal representatives, so as to invalidate any payment made by them or either of them to the mortgagee." (Gen. Stat. 1915, § 6466.) That provision, however, has relation only to the effect of the general recording act as applied to assignments of mortgages. It does not undertake to impose any new duty upon the assignee in that respect, but merely to limit or define the effect of a record made under the existing statute. The language of the statute now under consideration is explicit, its obvious purpose being to protect the mortgagor in making payment to his original creditor when no assignment of the mortgage has been

recorded, and we cannot believe the legislature intended to exclude from its operation by implication mortgages securing negotiable notes, which form so large a proportion of the total number of real-estate mortgages given. It is only in the case of mortgages securing negotiable obligations that there is any particular occasion for such a statute, for where the obligation is nonnegotiable the debtor who has no notice of an assignment may make a valid payment to the original creditor. (19 R. C. L. 357. See, also, 27 Cyc. 1315.) The specific provision that "no transfer of any note, bond or other evidence of indebedness, by indorsement or otherwise,". can hardly have been framed or adopted under the impression that it did not reach negotiable paper. It was said of this statute in a case where the mortgage secured a negotiable note:

"That act does not undertake to limit the methods by which real-estate mortgages may be transferred, and it does not provide that the failure to make a record of an assignment of a mortgage shall invalidate the security or the transfer. It was intended as a protection to mortgagors, and the only penalty prescribed for not recording the transfer is that all payments made by the mortgagor to the mortgagee or to any one who appeared to be the owner shall be credited to the mortgagor, although the assignee never received such payments. This was the view taken of the statute in earlier cases." . (*Anthony v. Brennan,* 74 Kan. 707, 709.)

Under the statute a transfer of the title to a note and mortgage may be had by an unrecorded assignment which will be effective for all purposes except that it will not prevent a payment to the mortgagee from operating as a discharge of the debt. (*Middlekauff v. Bell,* 111 Kan. 206, 207 Pac. 184.)

The plaintiff suggests that the uniform negotiable instruments act (Gen. Stat. 1915, ch. 82) having been adopted since the enactment of the statute here in controversy, should be deemed to supersede it to the extent of determining what is necessary to an effective transfer of title to a negotiable note and whatever security it carries. The law of negotiable instruments is not materially different now with respect to any feature affecting that matter from what it was when the statute relating to the recording of assignments of real-estate mortgages was passed. It is for the most part declaratory—essentially a codification of the law as it already existed, and plainly was not intended to amend by implication the statute relating to the recording of assignments of mortgages.

The rule is familiar that the maker of a negotiable note secured

by mortgage is not protected in making payment to the mortgagee after assignment. (19 R. C. L. 358.) But among the decisions supporting that rule we find none involving a statute such as that we are now considering. In the plaintiff's brief a number of cases are cited from Massachusetts, where at one time an act relating to the registration of land titles provided that assignments of mortgages on land should take effect only from their registration; but they do not discuss that statute, and in fact seem to have been decided before its enactment.

The situation is such that one or the other of two innocent persons must suffer loss through the misfeasance of the loan company. If it were not for the specific statute the loss would fall upon the defendant for neglecting the precaution otherwise required of him to see that his payments reached the then owner of the note. That statute, however, places the loss upon the plaintiff because of her neglect to record the assignment.

2. Before the execution of the mortgage in question the defendant, H. H. Waddle, applied to the mortgagees, J. L. Pettyjohn & Company, for a loan, and in his signed application was included the statement that he appointed them his attorneys to procure the loan from any person or corporation, followed by the words—"My said attorney being authorized by me to receive and transmit my funds for the payment of interest or principal on said loan as it may from time to time become due and payable." The plaintiff regards this as conclusive proof that the mortgagees acted as the agent of the mortgagor in accepting the payments, and argues that the loss resulting from the retention of the money by them should therefore fall upon him. Whatever may have been the intention of the parties when the negotiations were begun the trial court found, and the evidence justified if it did not compel the finding, that the money was actually lent to Waddle by Pettyjohn & Company, and the mortgage made by him to them was later sold to the plaintiff, a transaction quite different from that with respect to which the agency was created. (*Fitzgerald v. Realty Co.*, 106 Kan. 54, 186 Pac. 739.)

3. As the defendant from time to time paid the accruing interest to Pettyjohn & Company he received from them the corresponding coupons, upon the back of each was printed "Pay to the order of ————," followed by the signature of the company in writing. The plaintiff contends that this was sufficient to advise the defendant

that the title to them had been transferred. If the indorsement had been made to the plaintiff—if her name had been inserted in the blank space—the contention might be sustained. (*Walter v. Logan,* 63 Kan. 193, 65 Pac. 225.) We do not regard the blank indorsement, however, accomplished by placing the payees' signature on the back of the coupon, as giving notice of a transfer, especially in view of the fact that the coupons also bore the "paid" stamp of the Pettyjohn Company.

4. Complaint is made of the admission in evidence of entries in the books of Pettyjohn & Company, and of correspondence between the company and the defendant, and *Goodyear v. Williams,* 73 Kan. 192, 85 Pac. 300, is cited in support of the objection. The facts there presented were quite different from those of the present case. There the mortgagor made payments at a different place from that provided in the note to an apparent stranger to the transaction, and the evidence held to be inadmissible was relied upon as proof that he was the plaintiff's agent. Here the payments were made to the mortgagee at the place appointed, and the issue was not that of agency in fact, but of the effect of the statute. If any incompetent evidence was admitted it could not have been prejudicial for the facts necessary to support the judgment were otherwise established.

5. The note, which was dated September 1, 1916, and due in five years, provided that payments of $100 or multiples thereof might be made at the maturity of any semiannual coupon due as late as March 1, 1917, on giving thirty days' notice. The defendant paid $300 on the principal September 1, 1918, and $200 on September 3, 1919. It is suggested that the latter payment was not made at the time interest was due, and that thirty days' notice was not given in either case. The statute authorizes the payment to the mortgagee of "all matured interest or the principal debt itself prior to the recording of such assignment." The authority of the mortgagee to accept the payments and thereby bind the assignee carried with it the authority to waive the slight delay in the payment and the giving of the thirty days' notice that it was to be made, if such waiver was necessary.

The judgment is affirmed.