(305 P.3d 1)

No. 107,300

U.S. BANK NATIONAL ASSOCIATION, as Trustee of the SECURITY NATIONAL MORTGAGE LOAN TRUST 2006-2 *Appellee*, v. STEVEN R. McCONNELL, *et al.*, *Appellants*.

Opin-
ion filed May 3, 2013.

*James F. McMahon*, of McConnell & McMahon, P.A., of Overland Park, for appellants.

*Wendy M. Green* and *Linda S. Mock*, of Shapiro & Mock, LLC, of Overland Park, for appellee.

Before McANANY, P.J., HILL and LEBEN, JJ.

McANANY, J.: This is an action to foreclose on the mortgage of a home. The district court granted summary judgment in favor of the plaintiff. The mortgagors Steven McConnell and his wife, Janet

McConnell, appeal. The McConnells raise a number of issues regarding the propriety of U.S. Bank's foreclosure action and of the district court's entry of summary judgment. Having considered each in detail, we find no error and affirm the district court.

*Facts*

On July 13, 2005, Steven McConnell executed an adjustable rate promissory note in the principal sum of $94,500 to be repaid in monthly installments over 30 years. Janet McConnell did not sign the note. Flatirons Financial, LLC, originated the loan. The loan was secured by a mortgage on the McConnells' home. Both Steven and Janet signed the mortgage. The mortgage was recorded with the Johnson County Register of Deeds on the following day.

In March 2008, Steven entered into a "Balloon Loan Modification Agreement" with U.S. Bank (Bank), the holder of the note. At least by April 1, 2008, the note was in default, and the McConnells do not dispute this fact.

In October 2008, the Bank filed this action to foreclose on the mortgage. The Bank did not seek a personal judgment against Steven on the unpaid note.

On November 21, 2008, the court entered an order extending the McConnells' date for filing their responsive pleading to December 24, 2008. Then on January 13, 2009, the Mortgage Electronic Registration Systems (MERS) assigned the McConnell mortgage to the Bank. As stated in *In re Martinez*, 444 B.R. 192, 196 (Bankr. D. Kan. 2011):

"The MERS System, a database owned by MERSCORP, Inc., the parent company of MERS, is designed to allow its members, which include originators, lenders, servicers and investors, to accurately and efficiently track transfers of servicing rights and beneficial ownership in the notes that are secured by the mortgages and deeds of trust held by MERS."

When no responsive pleading was forthcoming from the McConnells on December 24, 2008, the district court entered default judgment in favor of the Bank on February 9, 2009. On February 20, 2009, the court ordered a sheriff's sale of the property.

Five days later, on February 25, 2009, the McConnells moved for leave to file their answer out of time and to set aside the default

judgment. The district court granted both motions. In their answer, the McConnells admitted that Steven executed the note and that they both executed the mortgage and that "they may be delinquent in their mortgage payments." However, the McConnells disputed the Bank's ownership of the note and the mortgage. The McConnells claimed the Bank was not the real party in interest, had violated their homestead rights, and had violated the Kansas Consumer Protection Act (KCPA), K.S.A. 50-623 *et seq.*

On March 17, 2009, the January 13, 2009, the MERS assignment of the mortgage to the Bank was recorded.

On June 1, 2009, the Bank moved for summary judgment, asserting that it was the holder of the note and mortgage, that the promissory note was in default, and that less than ⅓ of the principle of the note had been repaid. In support of its motion the Bank included (1) an affidavit of Kathy Watson, the asset manager of the company that serviced loans for the Bank, with an accompanying ledger detailing the mortgage loan records; (2) the August 8, 2008, "Notice to Collect Debt" letters addressed to the McConnells; (3) an unofficial reinstatement letter detailing the reinstatement totals; and (4) a document dated January 13, 2009, detailing the assignment and transfer of the mortgage from MERS to the Bank.

The McConnells failed to respond to the motion, and the court entered summary judgment in favor of the Bank on July 15, 2009.

On August 5, 2009, the Bank moved to set aside the judgment, stating that "the parties have agreed to set aside the Judgment in anticipation that the Debtor will be able to bring the loan current." On August 6, 2009, the district court granted the motion and set aside the judgment.

On July 30, 2010, the McConnells filed their brief opposing the Bank's summary judgment motion. There followed various continuances. The hearing on the Bank's motion was continued from April 22, 2011, to June 27, 2011, to allow the McConnells time to review the assignment documents and to submit additional discovery requests to the Bank.

At the June 27, 2011, hearing on the summary judgment motion, the McConnells' counsel asked for a further continuance to conduct more discovery because "the note didn't transfer with the

mortgages necessarily, or at least I can't tell. . . . I don't understand how MERS could then transfer what they don't own." The Bank's counsel replied, "MERS is an agent, pure and simple." Upon questioning by the court, the Bank's counsel stated, "This loan was transferred into MERS at one point in time in—it's been transferred several times. It was transferred into MERS at one point in time into the MERS system and it has since been transferred out. It was actually transferred out quite some time ago." The court denied a continuance but permitted the Bank to file a reply brief on these issues before ruling on the merits. Thereafter, the Bank filed its reply, and the McConnells filed their final response.

On July 30, 2011, the district court granted U.S. Bank's motion for summary judgment. The court ruled:

- U.S. Bank was the holder of the note and was entitled to enforce both the note and the mortgage.
- The McConnells' claims that U.S. Bank violated the KCPA were not properly identified as counterclaims and were also not substantiated by anything of evidentiary value.
- Janet McConnell, by signing the mortgage, consented to the alienation of the homestead under K.S.A. 60-2301; therefore, the mortgage was enforceable as to her.

On October 4, 2011, the district court entered its final judgment, and the McConnells then appealed.

*Standard of Review*

The parties are well acquainted with the standards for granting summary judgment. They are stated in detail in *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 330, 277 P.3d 1062 (2012). In our de novo review of the Bank's motion, we apply those same standards.

*Standing*

The McConnells challenge the Bank's standing in this foreclosure action because it was not the holder of the note and mortgage on the day suit was filed.

In Kansas, standing is a part of subject matter jurisdiction, and the issue may be raised by the parties or the court at any time. *Vorhees v. Baltazar*, 283 Kan. 389, 397, 153 P.3d 1227 (2007). We have unlimited review over whether the Bank had standing to bring this foreclosure action. See *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, Syl. ¶ 1, 189 P.3d 494 (2008).

"Standing is a question of whether the plaintiff has alleged such a personal stake in the outcome of a controversy as to warrant invocation of jurisdiction and to justify exercise of the court's remedial powers on his·or her behalf. A party must have a sufficient stake in the outcome of an otherwise justiciable controversy in order to obtain judicial resolution of that controversy. The party must have personally suffered some injury and there must be a causal connection between the injury and the challenged conduct." *Mortgage Electronic Registration Systems v. Graham*, 44 Kan. App. 2d 547, Syl. ¶ 1, 247 P.3d 223 (2010).

There is no question that the Bank held the note before filing this foreclosure action. The Bank and Steven entered into a loan modification agreement dated March 7, 2008, in which Steven acknowledged that the Bank held the note *and* the mortgage at the time. Steven signed the agreement and his lawyer, the same lawyer representing the McConnells in this foreclosure, witnessed Steven's signature. But this suit was filed on October 2, 2008, and the mortgage was not·formally assigned to the Bank until January 13, 2009.

K.S.A. 60-217 provides that "[e]very action shall be prosecuted in the name of the real party in interest." The statute further provides:

"No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." K.S.A. 60-217.

Thus, it is apparent that commencement of an action by one who is not the real party in interest can be corrected in certain circumstances, and the correction relates back to the date the action was commenced.

In Kansas, it has been the law since 1899 that the note follows the mortgage. In other words, if one holds the mortgage, it necessarily follows that one also holds the note that the mortgage secures. Thus, K.S.A. 58-2323 provides: "The assignment of any mortgage as herein provided shall carry with it the debt thereby secured." The question is whether the converse is true: Does the mortgage follow the note? If not, can the absence of the mortgage be corrected by a later transfer and thereby satisfy the standing requirement of K.S.A. 60-217?

In *McLean v. JP Morgan Chase Bank Nat. Ass'n*, 79 So. 3d 170 (Fla. Dist. App. 2012), the Florida District Court of Appeals dealt with a comparable situation. Chase brought suit to foreclose on a mortgage given by McLean to secure his note, but the mortgage was not assigned to Chase until 3 days after suit was filed. Chase moved for summary judgment and attached an affidavit stating that it was the owner of the note and mortgage but did not specify when Chase acquired the note in relation to the date suit was filed. Citing Florida case authorities, the court noted:

" '[A] mortgage is but an incident to the debt, the payment of which it secures, and its ownership follows the assignment of the debt. If the note or other debt secured by a mortgage be transferred without any formal assignment of the mortgage, or even a delivery of it, the mortgage in equity passes as an incident to the debt . . . .'

. . . .

"Even in the absence of a valid written assignment, the 'mere delivery of a note and mortgage, with intention to pass the title, upon a proper consideration, will vest the equitable interest in the person to whom it is so delivered.' *Johns v. Gillian*, 134 Fla. 575, 184 So. 140, 143 (1938). Thus, where there is an indication that equitable transfer of the mortgage occurred prior to the assignment, dismissal of the complaint is error, even if the assignment was executed after the complaint was filed. *See Salomon*, 874 So.2d at 682-83." 79 So. 3d at 173.

While this Florida court held that standing to foreclose could not be cured by an after-filing assignment of the note, the court held that there were still ways in which the plaintiff could establish standing to foreclose.

"Where the plaintiff contends that its standing to foreclose derives from an endorsement of the note, the plaintiff must show that the endorsement occurred prior to the inception of the lawsuit. If the note or allonge reflects on its face that

the endorsement occurred before the filing of the complaint, this is sufficient to establish standing. [Citation omitted.]" 79 So. 3d at 174.

Thus, the key document granting standing was the note, not the mortgage, since the mortgage followed the note. Because the assignment of the note did not specify the date on which the assignment occurred, Chase's summary judgment was reversed and the case remanded for a determination of when Chase acquired the note in relation to the date suit was filed. 79 So. 3d at 174-75.

*CitiMortgage, Inc. v. Patterson*, 2012 Ohio 5894, 984 N.E.2d 392 (2012), presented a similar situation. The assignment of the mortgage to CitiMortgage occurred 9 days after CitiMortgage filed its mortgage foreclosure action. CitiMortgage obtained a default judgment, and Patterson moved to set it aside, claiming Citi-Mortgage lacked standing to foreclose. The district court set aside the default judgment and dismissed the action on the grounds that CitiMortgage lacked standing to prosecute the action.

CitiMortgage argued that any defect in standing was cured when it obtained an assignment of the mortgage before obtaining a default judgment against Patterson. The Ohio Court of Appeals cited the Ohio Supreme Court's decision in *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St. 3d 13, 979 N.E.2d 1214 (2012), in which the court stated that while the plaintiff could not obtain standing through a postfiling assignment of the mortgage,

" '[h]ere, Federal Home Loan concedes that there is no evidence that it had suffered any injury at the time it commenced this foreclosure action. Thus, because it failed to establish an interest in the note *or* mortgage at the time it filed suit, it had no standing.' " *CitiMortgage*, 984 N.E.2d at 396.

From this the *CitiMortgage* court reasoned that though the plaintiff did not obtain an assignment of the mortgage until after suit was filed, unlike the plaintiff in *Schwartzwald*, CitiMortgage held the note at the time it filed suit and being the holder of the note it had standing to pursue this action. Thus, the trial court erred in setting aside CitiMortgage's judgment. 984 N.E.2d at 398.

Here, the record conclusively shows that the Bank held Steven's note, which was the subject of a loan modification agreement the

parties entered into well before the Bank initiated this foreclosure action.

Kansas has long held that the holder of the note is also the holder of the mortgage securing it. In *Anthony v. Brennan*, 74 Kan. 707, 87 P. 1136 (1906), the plaintiff obtained an assignment of the mortgage from one, but not all, of the mortgagees before filing a foreclosure action. The mortgagor claimed the plaintiff lacked standing, and the plaintiff's later efforts to obtain assignments from the remaining mortgagees did not cure the standing defect that existed at the time suit was filed. In rejecting the mortgagor's argument, the court cited *O'Keeffe v. National Bank*, 49 Kan. 347, 30 P. 473 (1892), in which the court held that "the title to a note and the mortgage securing its payment passed by delivery, and that the possession of the instruments and their production at the trial by the plaintiff furnished *prima facie* evidence of his ownership." *Anthony*, 74 Kan. at 708-09.

In *Middlekauff v. Bell*, 111 Kan. 206, 207, 207 P. 184 (1922), our Supreme Court held:

"An assignment of a mortgage is merely a formal transfer of title to the instrument, and the assignment from the bank to the plaintiff was admittedly good for that purpose. The plaintiff, however, did not need the assignment in order to invest her with ownership of the mortgage. She acquired full title by purchase of the note which it secured, and the assignment may be excluded from consideration without prejudice to her lien."

The court reasoned:

" 'The mortgage is a mere security, creating a lien upon the property, but vesting no title. The debt secured by the mortgage is the principal thing, and the mortgage the mere incident following the debt wherever it goes, and deriving its character from the instrument which evidences the debt.' " 111 Kan. at 208.

Further, the *Middlekauff* court quoted *Insurance Co. v. Huntington*, 57 Kan. 744, Syl. ¶ 1, 48 P. 19 (1897): " 'The assignment and delivery of a negotiable promissory note before maturity operates as an assignment of a mortgage given as security for the payment of the note.' " 111 Kan. at 209.

In a case with disparate facts, *Army Nat'l Bank v. Equity Developers, Inc.*, 245 Kan. 3, 17, 774 P.2d 919 (1989), the court reaffirmed this notion by stating: "Our view is that the mortgage

follows the note. A perfected claim to the note is equally perfected as to the mortgage."

Likewise, in *MetLife Home Loans v. Hansen*, 48 Kan. App. 2d 213, Syl. ¶ 5, 286 P.3d 1150 (2012), a panel of our court held that the mortgage follows the note when it stated: "The transfer of an obligation or debt secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise." Further: "Kansas law favors keeping the mortgage and the right of the enforcement of the obligation it secures in the hands of the same person or entity." 48 Kan. App. 2d 213, Syl. ¶ 6.

Finally, Restatement (Third) of Property (Mortgages) § 5.4(a) (1996) provides: "A transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise."

This approach is consistent with the reality of modern residential lending practices, in which the lender or a later holder of the note ordinarily does not look to the borrower's financial ability to satisfy a money judgment in the event of default on the note, but rather to the value of the home which stands as collateral for the debt. That was the case here, where the Bank did not seek a personal judgment against Steven but only sought to foreclose on the residence which stood as collateral for the loan.

Because the mortgage followed the note and there is no genuine fact issue about the Bank being the holder of the note at the time suit was filed, we conclude that the Bank had standing to pursue this foreclosure action. The formal assignment of the mortgage after the date suit was filed did not create a genuine issue of material fact that stood in the way of summary judgment because, under the analyses in *JP Morgan Chase*, *CitiMortgage*, and the Kansas cases discussed above, the fact that the Bank held the promissory note was sufficient to give it standing to pursue this action.

*The McConnells' KCPA Counterclaims*

The McConnells argue that the district court erred in granting summary judgment to the Bank without first addressing the KCPA claims that they raised in their answer to the petition for foreclo-

sure and in their response to the Bank's motion for summary judgment.

In the McConnells' answer to the Bank's petition, they alleged that the Bank violated the KCPA by engaging in unfair and deceptive acts and practices, including: (1) wrongful acceleration of the loan; (2) failure to provide the McConnells any opportunity to mitigate or obtain mortgage forbearance or mortgage modification opportunities; and (3) breach of the Bank's duty of good faith and fair dealing. The McConnells reiterated these alleged violations of the KCPA in their memorandum in opposition to the Bank's motion for summary judgment. The McConnells did not support these allegations with any evidence or argument regarding the elements of the alleged KCPA violations.

In ruling on the Bank's motion for summary judgment, the district court stated:

"Defendants also argue that summary judgment cannot be granted without considering whether Plaintiff has committed violations of the [KCPA]. Although the KCPA violations were [mentioned] in Defendants' Answer, they were not properly identified as a part of a formal counterclaim and are currently unsubstantiated by anything of evidentiary value. Therefore, the Court need not address Defendants' KCPA arguments prior to considering Plaintiff's Motion for Summary Judgment."

The McConnells contend that the district court erred in stating that it was necessary to formally allege their defenses as counterclaims before the court would consider them. The McConnells point to K.S.A. 2012 Supp. 60-208(c), which provides: "(2) *Mistaken designation*. If a party mistakenly designates a defense as a counterclaim or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so."

But the district court also clearly stated that the McConnells' KCPA claims "are currently unsubstantiated by anything of evidentiary value."

The McConnells claim that the Bank never responded to their allegations of KCPA violations and that this failure to respond should be viewed as an admission of the KCPA violations. But in

its motion for summary judgment, the Bank specifically responded to the McConnells' claims that it violated the KCPA:

"The Defendants assert that the Plaintiff violated the [KCPA] by engaging in unfair and deceptive practices. They cite the Plaintiff's 'wrongful acceleration of the loan' and the incursion of 'foreclosure related fees and costs' without first providing notice. However, the acceleration was not wrongful since the Defendants have a balance due and owning since March 1, 2008, and they were sent notice of their default on or about August 8, 2008. Nor was the commencement of foreclosure proceedings wrongful, since the Defendants are in default, have had proper notice, and have not taken the opportunity to cure the default. The Plaintiffs have a right to bring suit under the terms of the mortgage and note, and have satisfied all requirements to do so."

The McConnells did not respond to these assertions in opposing the Bank's summary judgment motion.

To oppose a motion for summary judgment, a party must come forward with something of evidentiary value to establish a material dispute of fact. *O'Brien*, 294 Kan. at 330. "Summary judgment is appropriate on claims under the KCPA if there is no evidence of deceptive or unconscionable acts. [Citations omitted.]" *Bomhoff v. Nelnet Loan Services, Inc.*, 279 Kan. 415, 424, 109 P.3d 1241 (2005).

K.S.A. 2012 Supp. 60-256(e)(2) provides:

"When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must, by affidavits or by declarations pursuant to K.S.A. 53-601, and amendments thereto, or as otherwise provided in this section, set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

No such evidence was forthcoming from the McConnells, and their mere allegations in a pleading are not an effective substitute. K.S.A. 2012 Supp. 60-256(e)(2). Even on appeal, they have not provided any argument to support their contentions that the Bank violated the KCPA. Issues not briefed are deemed abandoned. See *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

The McConnells have failed to present any evidence which would create a genuine issue of material fact regarding their KCPA claims which would bar summary judgment.

*Appropriateness of Summary Judgment*

The Bank presented a prima facie case for summary judgment based on evidence that Steven signed the note and Steven and Janet signed the mortgage, that Steven has defaulted in the repayment of the note, and that the Bank is now the holder of the note and the mortgage. See *Hansen*, 48 Kan. App. 2d at 218. The McConnells raise a number of assertions which they claim bar the entry of summary judgment against them.

First, the McConnells refer to a law review article by Christopher Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359 (2010), which the McConnells claim "gives great insight as to the inner works of MERS and the problems that arose as a result of the use of MERS and the securitization process in the subprime mortgage market." The McConnells then "incorporate the law review article" in their appellate brief but do not explain how it supports the arguments they now make in opposing summary judgment.

Next, the McConnells contend that the record does not establish the chain of title of the mortgage. They claim that the Bank presented no evidence regarding the transfer or assignment of the note. The Bank responds that a complete chain of title was produced to the court. But the controlling factor is whether the Bank was the holder of the note and mortgage so as to have standing to bring this action. As discussed above, that clearly was the case.

But the McConnells argue that the note was not negotiable because Steven was already in default when the purported transfer to the Bank occurred. The McConnells base this argument on the assertion that the Bank could not have been a holder in due course under K.S.A. 84-3-302. It is true that a holder in due course takes the instrument and may enforce it without being subject to the obligor's defenses. See K.S.A. 84-3-302, Comment 4; *Kaw Valley State Bank & Trust Co. v. Riddle*, 219 Kan. 550, 555, 549 P.2d 947 (1976). But the Bank was still the holder of the note, and the McConnells have failed to present facts supported by a viable legal theory that bar summary judgment on the note which clearly was in default.

Next, the McConnells claim the district court erred in requesting additional pleadings "with no concomitant right to discovery, especially regarding the documents that were first produced to Defendants' counsel earlier that day." Unlike the de novo review of the Bank's summary judgment motion which we have conducted so far, this argument is premised on the district court having abused its discretion on a discovery question. *Troutman v. Curtis*, 286 Kan. 452, 458-59, 185 P.3d 930 (2008).

The district court did not permit the filing of additional pleadings. Rather, the judge allowed additional briefing, following which "[i]f I determine that there's still some unanswered questions or issues, then I'll probably grant [the defendants] some time for additional discovery." The parties provided additional briefing. In their final brief, the McConnells sought additional discovery on the chain of title to the note and mortgage. The district court denied additional discovery, stating:

"This matter has been pending since October 8, 2008. Now almost three years later, Defendants claim that further discovery is necessary. This Court finds that Defendants have had ample time to conduct discovery, and the Court has delayed ruling on the merits of the subject Motion for well over a year. . . . [T]he Court finds that Defendants have been given more than enough time to conduct discovery."

We find no abuse of the district court's discretion in this ruling.

Finally, the McConnells claim that the documents and affidavits provided in support of the Bank's motion for summary judgment contained hearsay statements. They specifically attack the affidavit of Kathy Watson, the asset manager of the company that serviced the loan.

But Watson's affidavit was introduced to establish that Steve was in default on the note, a fact which was uncontroverted. Through Watson's affidavit the Bank established the unpaid balance on Steven's promissory note. But the Bank is not seeking a personal money judgment against Steven, only foreclosure of the mortgage. Watson asserts that less than one-third of the original balance of the note has been repaid, and the McConnells admit this fact. While the McConnells question the calculation of interest on the note, because no personal judgment is being sought against Steven

and there is no issue about redemption rights in view of the agreed unpaid principle on the loan, any dispute regarding the facts contained in the Watson affidavit do not involve disputed issues of *material* fact which precludes summary judgment.

*Severance of the Note from the Mortgage*

As a stand-alone argument against granting summary judgment of foreclosure, the McConnells argue that the note and the mortgage were severed when the note was held by the Bank and the mortgage was held by MERS. They claim that the severance cannot be cured by MERS's subsequent assignment of the mortgage to the Bank.

Our Supreme Court described the problems that arise when a mortgage is separated from the promissory note it secures by quoting *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623 (Mo. App. 2009), in which the *Bellistri* court stated:

" 'The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note. [Citation omitted.] Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. [Citation omitted.] The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust.' " *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 540, 216 P.3d 158 (2009).

Thus, our Supreme Court held: "Indeed, in the event that a mortgage loan somehow separates interests of the note and the [mortgage] with the [mortgage] lying with some independent entity, the mortgage *may become* unenforceable." (Emphasis added.) 289 Kan. at 540.

While the McConnells argue Steven's note became severed from the McConnells' mortgage, they fail to explain how the note holder's interest and the mortgagee's interest could not later be reunited before judgment.

First, we note our earlier discussion in the section on standing regarding the law in Kansas that a promissory note and the mortgage securing it are, as a general rule, inseparable. *Bank Western v. Henderson*, 255 Kan. 343, 354, 874 P.2d 632 (1994); *Middle-*

*kauff*, 111 Kan. at 207. Generally, " 'the mortgage follows the note. A perfected claim to the note is equally perfected as to the mortgage.' " *Bank Western*, 255 Kan. at 354 (quoting *Army Nat'l Bank*, 245 Kan. at 17). The assignment and delivery of a negotiable promissory note operates as an assignment of the mortgage given as security for payment of the note. *Middlekauff*, 111 Kan. at 209.

But even if the interests of the note holder become separated from the interests of the mortgage holder, we see no impediment to a foreclosure action if those interests are subsequently reunited before judgment. The approaches used by the courts in Ohio and Florida in *CitiMortgage* and *JP Morgan Chase* discussed earlier are logical, practical, and consistent with our law. Under Kansas law the mortgage follows the note. But any arguable severance of the note holder's interest from the mortgage holder's interest should be able to be cured with the transfer of the mortgage to the Bank, even if that occurs after suit was filed so long as the transfer occurs before the Bank moves for summary judgment.

But the McConnells argue that it was MERS that made the assignment of the mortgage to the Bank, and because MERS served only as the morgagee's "nominee" and as a "digital mortgage tracking service," MERS had no rights in the mortgage which it could assign to the Bank. If this is true, then MERS's holding the mortgage as a "nominee" while the lender continued to hold the promissory note did not result in a splitting of the interests. In *In re Martinez*, 444 B.R. 192 (Bankr. D. Kan 2011), the court determined that in this context the terms "nominee" and "agent" are interchangeable. The court concluded: "Because MERS was holding the Mortgage in question as an agent of Countrywide, the Court finds that the Note and Mortgage were never split, and remain enforceable." 444 B.R. at 206. See *Landmark Nat'l Bank*, 289 Kan. at 539, wherein our Supreme Court characterized MERS as a mere "straw man."

As stated in Restatement (Third) of Property (Mortgages) § 5.4(c): "A mortgage may be enforced only by, or on behalf of, a person who is entitled to enforce the obligation the mortgage secures." The Bank is the holder of the note. Steven acknowledges that he signed the note and that he is in default. The McConnells

acknowledge that they signed the mortgage securing the note. The Bank has sued to foreclose on the mortgage but is not seeking a personal judgment against Steven. The McConnells would have us declare the mortgage entirely unenforceable and thereby create an unwarranted windfall for them. A mortgage foreclosure is a proceeding in equity. *Karnes Enterprises, Inc. v. Quan*, 221 Kan. 596, 602, 561 P.2d 825 (1977). The McConnells' position is inconsistent with principles of equity and contrary to the Restatements' admonition against unwarranted windfalls. See Restatement § 5.4, Comment (e).

*Homestead Rights*

Finally, the McConnells argue that Janet signed only the mortgage but not the promissory note or the loan modification agreement; thus, she has not consented to the impairment of her homestead rights in the family residence.

K.S.A. 60-2301 provides:

"A homestead to the extent of 160 acres of farming land, or of one acre within the limits of an incorporated town or city, or a manufactured home or mobile home, occupied as a residence by the owner or by the family of the owner, or by both the owner and family thereof, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon. *The provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife,* when that relation exists." (Emphasis added.)

Janet signed the mortgage whereby the family residence became security for Steven's loan. The homestead rights described in K.S.A. 60-2301 do not apply when both spouses have consented to a lien on the property. Janet clearly consented to the mortgage lien which the Bank now seeks to foreclose.

Based upon our examination of the record and the applicable law, the Bank has demonstrated that there exists no genuine issue of material fact and that it is entitled to a judgment of foreclosure as a matter of law. None of the arguments presented by the

McConnells creates a disputed issue for trial. The district court correctly granted summary judgment in favor of the Bank.

Affirmed.