IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,235

FV-I, INC.,
In Trust for MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS, LLC,
*Appellant*,

v.

CONSTANCE M. KALLEVIG, *et al*.,
*Defendants*,

and

BANK OF THE PRAIRIE,
*Appellee.*

SYLLABUS BY THE COURT

1.

Standing is the right to make a legal claim or seek enforcement of a duty or right. The question of standing is one of law over which this court's scope of review is unlimited. Standing is a part of subject matter jurisdiction, and the issue may be raised by the parties or the court at any time.

2.

The burden to establish standing rests with the party asserting it. The nature of that burden depends on the stage of the proceedings because the elements of standing are not merely pleading requirements. Each element must be proved in the same way as any other matter and with the degree of evidence required at successive stages of the litigation.

1

3.

At the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice to show a plaintiff's standing, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, a plaintiff can no longer rest on mere allegations and must set forth by affidavit or other evidence specific facts that for purposes of the summary judgment will be taken to be true. At the final stage of a case, such facts, if controverted, must be supported adequately by the evidence adduced at trial.

4.

In general, to have standing, a plaintiff must have a sufficient stake in the outcome of an otherwise justiciable controversy in order to obtain judicial resolution of that controversy. Under Kansas law, in order to establish standing, a plaintiff must show that (1) he or she suffered a cognizable injury and (2) there is a causal connection between the injury and the challenged conduct. A cognizable injury is established by showing a personal interest in a court's decision and that he or she personally suffers some actual or threatened injury as a result of the challenged conduct. Moreover, the injury must be particularized, *i.e.*, it must affect the plaintiff in a personal and individual way.

5.

A holder of a promissory note has standing to enforce the terms of indebtedness, including the right to foreclose on a mortgage that secures it.

6.

Standing in a foreclosure action is predicated on the plaintiff's ability to demonstrate—either in the pleadings, upon motion for summary judgment, or at trial— that it was in possession of the promissory note with enforcement rights at the time it filed the foreclosure action. Allowing a lack of standing to be cured by a post-petition

2

assignment granting enforcement rights in the note after the foreclosure action has been filed defeats any incentive for a note holder to ensure that it has enforcement rights prior to filing the action.

7.

In this case, application of the business records exception to the hearsay rule to exclude endorsements on a promissory note was erroneous because the signatures were not being admitted to prove the truth of the matter asserted, *i.e.,* the authenticity of the signatures. Rather, the existence of the endorsements themselves was the element critical to the enforcement rights at issue under the Uniform Commercial Code.

8.

The UCC treats stamp signatures as equal to original signatures. K.S.A. 84-3-308 creates a presumption that stamp signatures are authentic. This presumption applies to endorsements as well. A defendant has the burden to present sufficient evidence denying an endorsement's validity before a plaintiff is required to introduce evidence to the contrary. Under the facts of this case, mere speculation based on plaintiff's inconsistent legal positions or the timing of its assertions was insufficient to meet the defendant's burden.

9.

In order for a plaintiff to prevail in its mortgage foreclosure proceeding, it must establish both that it possessed enforcement rights in the note under Article 3 of the UCC, K.S.A. 84-3-301, and that those rights existed at the time it filed the action. This can be accomplished through the pleadings, when faced with a motion for summary judgment, or at trial. Possession or assignment of the mortgage alone when the foreclosure action is filed is not sufficient to establish standing, and the lack of standing cannot be cured by a post-petition assignment of a promissory note. The proper remedy for a lack of standing is dismissal without prejudice.

10.

Regardless of whether a promissory note and mortgage have split, or whether the party capable of enforcing the note was not a party to this case, the mortgage itself still exists.

Review of the judgment of the Court of Appeals in an unpublished opinion filed February 6, 2015. Appeal from Miami District Court; STEVEN C. MONTGOMERY, judge. Opinion filed April 21, 2017. Judgment of the Court of Appeals affirming the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part, reversed in part, and remanded with directions.

*Nancy Merrill Wilson*, of South & Associates, P.C., of Overland Park, argued the cause, and *Stephanie L. Mendenhall*, of the same firm, was with her on the briefs for appellant.

*Timothy H. Girard*, of Woner, Glenn, Reeder & Girard, P.A., of Topeka, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

ROSEN, J.: This case stems from a mortgage foreclosure petition that plaintiff/appellant FV-I, Inc. filed in June 2011. The homeowner-debtors are no longer involved in this proceeding, as the parties agreed to sell the property and place the proceeds in escrow pending resolution of this case. The dispute is between FV-I and Bank of the Prairie (BOP), a bank with junior mortgages on the same property. Although summary judgment was initially granted in BOP's favor, the Court of Appeals reversed and remanded for trial to determine whether FV-I had possession of the promissory note underlying the mortgage at the time it filed the mortgage foreclosure. *FV-I, Inc. v. Kallevig*, No. 108,706, 2013 WL 2321198 (Kan. App. 2013) (unpublished opinion) (*Kallevig I*).

4

At trial, FV-I presented the original note endorsed in blank and the original mortgage with an assignment to FV-I, although it had attached a previous copy of the note without the endorsement in blank to the petition. The district court held: (1) FV-I lacked standing to file the petition because it did not have possession of the original note prior to filing its petition; (2) the note and mortgage FV-I held had split because these documents did not follow the same path to FV-I; (3) FV-I lacked enforcement rights in the note because FV-I had failed to lay the proper foundation for the endorsement in blank on the note and therefore, the court must exclude the endorsement in blank from evidence; and (4) the first three rulings meant that BOP's mortgages were therefore superior to FV-I's mortgage.

The Court of Appeals affirmed the district court in *FV-I, Inc., v. Kallevig*, No. 111,235, 2015 WL 717776 (Kan. App. 2015) (unpublished opinion) (*Kallevig II*) holding FV-I did not have standing to pursue its claim without establishing enforcement rights in the promissory note as of the date of the filing, FV-I's mortgage was unenforceable, and FV-I's mortgage lost its superior priority to BOP's mortgages. FV-I petitions for review, arguing standing does not have to be proved at the time of filing and that a lack of standing should not result in its mortgage losing its superior position.

We agree with the *Kallevig II* panel that standing is based on the party's enforcement and possession rights at the time of filing. However, evidentiary rulings excluding endorsements on the promissory note compel us to remand for a rehearing regarding standing and the panel's priority determination. We therefore reverse contrary rulings by the district judge and the Court of Appeals, and we remand the case to the district court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

On September 16, 2005, Kermit and Constance Kallevig and GMAC Bank entered into a note and mortgage concerning property in Bucyrus. On June 15, 2011, the mortgage was assigned to FV-I by Mortgage Electronic Registration Systems, Inc., (MERS) as a nominee for GMAC Bank, its successors, and assigns. On June 24, 2011, FV-I filed a petition to foreclose the mortgage. Attached to the petition was a copy of the mortgage and a note with an undated stamp endorsement from GMAC Bank to GMACB Asset Management Corp. FV-I indicated it had authority to enforce the note and mortgage under K.S.A. 60-217.

FV-I named BOP as a party because BOP had three mortgages on the same property that FV-I claimed were either subordinated by agreement or otherwise junior: a mortgage recorded October 16, 2002, subordinated by agreement; a mortgage recorded October 19, 2006; and a mortgage recorded September 28, 2007. FV-I attached the subordination agreement to the petition.

BOP filed an answer, a counterclaim against FV-I, and a cross-claim against the Kallevigs. BOP acknowledged that it held three mortgages on the property and that it had executed a subordination agreement. BOP argued FV-I failed to state a claim upon which relief could be granted and asked that the district court establish that its mortgages had priority.

FV-I and BOP filed multiple motions back and forth. FV-I consistently claimed the right to enforce the note by possession and endorsement of the note. BOP challenged whether FV-I had standing, whether FV-I's mortgage and note had split, and whether FV-I had the ability to enforce the note. FV-I subsequently claimed enforcement rights through two additional means.

6

The first was based on an allonge transferring the note to FV-1—originally with GMACB—from Ally Bank, as successor in interest to GMACB. FV-I indicated it did not know when the allonge had been prepared. The second was the original note, which included two additional endorsements that the note attached to FV-I's petition did not have: the first was without recourse from GMACB to Residential Funding Company, LLC (Residential); and the second was an undated endorsement in blank from Residential.

The district court granted BOP's motion for summary judgment, holding that FV-I lacked standing because it failed to establish ownership of the note as of the date FV-I filed its petition. The district court further held that FV-I's mortgage and note had split, which rendered FV-I's mortgage unenforceable and allowed BOP's mortgages to jump ahead in priority.

On appeal, a panel of the Court of Appeals reversed the order in *Kallevig I*. The panel held that FV-I must establish it was in possession of the note prior to filing its petition, in order to establish holder status and a right to enforce the note. *Kallevig I*, 2013 WL 2321198, at *4. The panel also observed that there was no evidence the note and mortgage had been split. 2013 WL 2321198, at *4. The panel concluded that neither party was entitled to judgment as a matter of law and reversed and remanded the case to determine when FV-I took possession of the note. 2013 WL 2321198, at *5. Neither party filed a petition for review of the *Kallevig I* decision.

On remand, the parties agreed to the sale of the subject real estate, and the sale proceeds were paid into escrow until a priority determination could be made. At the October 8, 2013, bench trial, the parties stipulated to the Kallevigs' default on the note. FV-I claimed enforcement rights through its status as holder of the original note and argued that the interests had not been split and that its mortgage had priority. BOP argued that there had been an "implied or inferred" split of the mortgage and note, that FV-I's

7

inability to explain how it had acquired the note was suspicious, and that the mortgage FV-I held was "ineffectual and unenforceable" because FV-I could not establish its enforcement rights. Regarding the two additional endorsements on the original note, BOP argued that, "if there was ever a presumption in their favor, it seems to me they've got a lot of work to do with regard to prov[ing] issues on authenticity or validity of those signatures."

At trial, Andy Chatfield testified for FV-I. He worked as an asset manager for AMS Servicing, LLC, a servicing agent that handled defaulted loans. AMS serviced the loans for FV-I and acquired the servicing of the Kallevig loan in January 2012—6 months after the petition in this case was filed. Chatfield was familiar with AMS' practices and procedures and was authorized to testify on behalf of FV-I. FV-I's counsel relied on Chatfield to lay the foundation for the original note that was endorsed in blank. Chatfield testified that it was the original note from the Kallevig's file, that to his knowledge FV-I had acquired the loan in 2010, but that he did not have any personal knowledge regarding the transfer of the note to FV-I prior to January 2012 by GMAC Bank and GMACB.

BOP challenged the two additional endorsements on the note. FV-I argued that signatures were presumed valid and that a challenge to the signature was an affirmative defense, which meant that BOP had the burden to prove the signatures were not authentic. The district court sustained BOP's objections to the foundation and hearsay of the two additional endorsements, reasoning that FV-I needed to lay a proper business record foundation for the endorsements in order for them to be admitted. The district court admitted the original note at trial without the last two endorsements, which included the endorsement in blank.

In the journal entry of judgment, the district court relied on its decision to exclude the two additional endorsements in holding that FV-I failed to establish it had

8

enforcement rights in the note. Relying on *Mortgage Electronic Registration Systems v. Graham*, 44 Kan. App. 2d 547, Syl. ¶ 1, 247 P.3d 223 (2010), the district court also held that FV-I failed to show it had standing to bring the suit because it had not established holder status as of the day it filed its petition. Relying on Ohio and Maine caselaw, the district court held that the lack of standing could not be cured by a post-filing assignment of the note to FV-I.

The district court held that the note and mortgage had split, that FV-I's mortgage was unenforceable, and that BOP's mortgages were therefore superior. It denied FV-I's petition, granted BOP judgment on its counterclaim against FV-I, and granted BOP default judgment on its cross-claim against the other defendants.

A panel of the Court of Appeals affirmed the district court in *Kallevig II*. The panel treated the primary issue as whether the district judge erred in holding that FV-I lacked standing. *Kallevig II*, 2015 WL 717776, at *4. The panel cited *MetLife Home Loans v. Hansen*, 48 Kan. App. 2d 213, 225, 286 P.3d 1150 (2012), for the proposition that a "holder of a promissory note has standing to enforce the terms of indebtedness, including the right to foreclose on a mortgage that secures it." 2015 WL 717776, at *4. The panel noted that a "mortgage is unenforceable when it is not held by the same entity that holds the promissory note," relying on our decision in *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 540-41, 216 P.3d 158 (2009) (recognizing the possibility of a mortgage and note split). 2015 WL 717776, at *4.

The panel held that FV-I had to establish enforcement rights in the note as of the filing of the petition in order to have standing to bring its mortgage foreclosure suit. *Kallevig II*, 2015 WL 717776, at *4. The panel held that FV-I lacked standing because it "produced no evidence that the district court as the factfinder found credible and reliable to show FV-I had possession or assignment of the note when the foreclosure petition was filed." 2015 WL 717776, at *5. The panel therefore held that the district court properly

9

determined FV-I's mortgage had lost its priority over BOP's mortgages. The panel held that BOP's mortgages were superior because FV-I's failure to establish enforcement rights in the note made the mortgage unenforceable, and the unenforceability of the mortgage meant there was no longer a mortgage for BOP's mortgages to be subordinate to. 2015 WL 717776, at *6.

The panel declined to address FV-I's challenges to the district court's ruling excluding the two additional endorsements and held that the district court's "ultimate decision did not include FV-I's and BOP's arguments over the note and mortgage split, [so] we see no need to address the arguments on appeal." 2015 WL 717776, at *6.

The panel also declined to consider whether, assuming FV-I could not enforce the note, another party would have been able to enforce the note because FV-I had not sought to join a necessary party to the action. 2015 WL 717776, at *6. The panel affirmed the district court's determination that FV-I lacked standing to initiate this foreclosure action. 2015 WL 717776, at *7.

ANALYSIS

*Standing*

Both the district court and the Court of Appeals in *Kallevig I* and *Kallevig II* treated this case as one that turns on whether FV-I had standing to initiate the foreclosure proceedings. On petition for review, FV-I first argues that the district court and Court of Appeals erred in requiring it to prove possession of the note and the existence of enforcement rights in it at the time it filed its petition in order to establish standing to pursue mortgage foreclosure. FV-I alternatively argues that standing could be established by its undisputed possession of the mortgage prior to filing, even without possession of the note.

10

*Standard of Review*

Standing is the "right to make a legal claim or seek enforcement of a duty or right." *Gannon v. State*, 298 Kan. 1107, 1122, 319 P.3d 1196 (2014). "The question of standing is one of law over which this court's scope of review is unlimited." 298 Kan. at 1122. Standing is a part of subject matter jurisdiction, and the issue may be raised by the parties or the court at any time. *Vorhees v. Baltazar,* 283 Kan. 389, 397, 153 P.3d 1227 (2007).

The burden to establish standing rests with the party asserting it. *Gannon,* 298 Kan. at 1123. "[T]he nature of that burden depends on the stage of the proceedings[,] because the elements of standing are not merely pleading requirements. Each element must be proved in the same way as any other matter and with the degree of evidence required at . . . successive stages of the litigation." 298 Kan. at 1123 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 [1992]).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' [Citation omitted.]" *Lujan*, 504 U.S. at 561. "In response to a summary judgment motion . . . the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' . . . which for purposes of the summary judgment will be taken to be true." 504 U.S. at 561. "[A]t the final stage, those facts (if controverted) must be 'supported adequately by the evidence adduced at trial.'" 504 U.S. at 561.

In general, to have standing, a plaintiff must have a "'sufficient stake in the outcome of an otherwise justiciable controversy in order to obtain judicial resolution of

that controversy.'" *Gannon,* 298 Kan. at 1122 (quoting *Moorehouse v. City of Wichita*, 259 Kan. 570, 574, 913 P.2d 172 [1996]).

"Under Kansas law, in order to establish standing, a plaintiff must show that (1) he or she suffered a cognizable injury and (2) there is a causal connection between the injury and the challenged conduct." *Solomon v. State*, 303 Kan. 512, 521, 364 P.3d 536 (2015). A cognizable injury is established by showing a "'personal interest in a court's decision and that he or she personally suffers some actual or threatened injury as a result of the challenged conduct.'" 303 Kan. at 521 (quoting *Sierra Club v. Moser,* 298 Kan. 22, 33, 310 P.3d 360 [2013]). Moreover, "[t]he injury must be particularized, *i.e.*, it must affect the plaintiff in a ""personal and individual way."'" 298 Kan. at 1123.

*Standing to Foreclose Mortgage*

A mortgage is a conveyance or retention of an interest in real property as security for performance of an obligation. Restatement (Third) of Property (Mortgages) §1.1 (1997). "Promissory notes and mortgages are contracts to which the rules of contract construction apply." *Hansen*, 48 Kan. App. 2d 213, Syl. ¶ 4.

A mortgage permits foreclosure on the property once the debt becomes due.

> "When an obligation secured by a mortgage becomes due, the mortgagee may either:
>
> (a) obtain a judgment against any person who is personally liable on the obligation and, to the extent that the judgment is not satisfied, foreclose the mortgage on the real estate for the balance; or
>
> (b) foreclose the mortgage and, to the extent that the proceeds of the foreclosure sale do not satisfy the obligation, obtain a judgment for the deficiency against any person

who is personally liable on the obligation in accordance with § 8.4." Restatement (Third) of Property (Mortgages) §8.2 (1997).

Payment is due at the time stated in the mortgage/note or upon acceleration.

> "An acceleration provision is a term in a mortgage, or in the obligation it secures, that empowers the mortgagee upon default by the mortgagor to declare the full mortgage obligation immediately due and payable. An acceleration becomes effective on the date specified in a written notice by the mortgagee to the mortgagor delivered after default." Restatement (Third) of Property (Mortgages) §8.1 (a).

Thus, in order to establish standing a foreclosing plaintiff must show a sufficient stake in the outcome to warrant invocation of the court's jurisdiction and a cognizable injury. *Solomon*, 303 Kan. at 521; *Gannon,* 298 Kan. at 1122. While an interest in the mortgage generally establishes a "sufficient stake" in the outcome, the mortgage itself may or may not establish a "cognizable injury."

In order to establish an injury in a mortgage foreclosing proceeding, the party must show that the debt is now due. In most mortgage foreclosure cases, this will likely be because the debt has been accelerated and become immediately due. The due date is accelerated when the debtor defaults; however, what constitutes a default is based on the terms of the contract—*i.e.*, the note, in most cases.

In these cases, the note therefore is necessary to establish an injury. However, the foreclosing plaintiff must show that *it* has been injured by establishing that it is entitled to enforce the note. See also Restatement (Third) of Property (Mortgages) §5.4(c) (1997) ("A mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation the mortgage secures.").

13

Thus, a "holder of a promissory note has standing to enforce the terms of indebtedness, including the right to foreclose on a mortgage that secures it." 2015 WL 717776, at *4. In this case, the *Kallevig II* panel identified the promissory note as "the key to showing FV-I had standing." 2015 WL 717776, at *5.

*Enforcement Rights under the UCC*

A note is a negotiable instrument, which is governed in Kansas by Article 3 of the Uniform Commercial Code (UCC), K.S.A. 84-1-101 *et seq.* K.S.A. 2016 Supp. 84-3-104; *Bank of America v. Inda*, 48 Kan. App. 2d 658, 665, 303 P.3d 696 (2013). The UCC explains who is entitled to enforce a note. Under K.S.A. 84-3-301, the "[p]erson entitled to enforce" a note is:

> "(a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to K.S.A. 84-3-309 or 84-3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument."

The "[h]older" includes "(A) The person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." K.S.A. 2016 Supp. 84-1-201(21). Under K.S.A. 84-3-205(b), a note can be endorsed "in blank," which means that the "instrument becomes payable to [the] bearer and may be negotiated by transfer of possession alone until specially endorsed." "It is a well-established general rule that the possession of negotiable paper proves prima facie the ownership of the holder. [Citations omitted.]" *King v. Bellamy,* 82 Kan. 301, 302, 108 P. 117 (1910).

14

"No distinction is drawn by the [UCC] in terms of whether the 'holder' is the holder for his or her own use and benefit or whether the holder holds as a fiduciary for another. Thus, *the fact that a holder is not the owner who is entitled to keep the proceeds for his or her own personal use does not affect the holder's right as holder to sue on the instrument.* A holder may sue in his or her own name alone although holding the paper as a fiduciary for another, and there is no obligation to join such other party as a co-plaintiff. This is true even though the holder does not have any express authorization from the beneficial owner of the paper to bring suit." (Emphasis added.) 5A Anderson, Uniform Commercial Code § 3-301:7, pp. 569-70 (3d ed. 1994).

Based on these provisions of the UCC, FV-I was entitled to enforce the note upon a showing (1) that the note was made payable to FV-I or was endorsed in blank and (2) FV-I was in possession of the note. However, a preliminary standing issue arises as to when FV-I must establish these requirements.

*Timing of Standing*

In this case, the district court held that FV-I failed to establish enforcement rights in the note attached to the petition, the allonge, or the original note, and that it failed to show that it had those rights on the day the petition was filed. On appeal, the *Kallevig II* panel held that FV-I had to establish enforcement rights in the note as of the filing of the petition in order to have standing to bring its mortgage foreclosure suit, and that it had failed to do so at trial. 2015 WL 717776, at *4. On petition for review, FV-I focuses on whether standing must be proved at the time of filing and argues the panel cited no Kansas authority for this proposition.

The panel relied on *McLean v. JP Morgan Chase Bank Nat. Ass'n*, 79 So. 3d 170, 173-74 (Fla. Dist. App. 2012), where Chase, the plaintiff in a mortgage foreclosure proceeding, submitted the original note, with a special endorsement in its favor, to the

15

district court 3 days after filing the complaint. The Florida court acknowledged that the note established "standing to foreclose, at least at some point," however,

> "the record evidence is insufficient to demonstrate that Chase had standing to foreclose *at the time the lawsuit was filed.* The mortgage was assigned to Chase three days after Chase filed the instant foreclosure complaint. While the original note contained an undated special endorsement in Chase's favor, the affidavit filed in support of summary judgment did not state when the endorsement was made to Chase. Furthermore, the affidavit, which was dated after the lawsuit was filed, did not specifically state when Chase became the owner of the note, nor did the affidavit indicate that Chase was the owner of the note before suit was filed. Therefore, Chase failed to submit any record evidence proving that it had the right to enforce the note on the date the complaint was filed. *See U.S. Bank Nat'l Ass'n v. Kimball,* 27 A.3d 1087 (Vt.2011) (bank that filed a foreclosure complaint against a homeowner did not show that, at the time it filed the complaint, the bank possessed the original promissory note either made payable to bearer with a blank endorsement or made payable to order with an endorsement specifically to the bank; although the bank ultimately submitted the promissory note with an undated specific endorsement to the bank, the bank provided no information as to when such endorsement was made).

> "We therefore reverse the summary judgment and corresponding final judgment of foreclosure. On remand, in order for Chase to be entitled to summary judgment, it must show, without genuine issue of material fact, that it was the holder of the note on the date the complaint was filed (i.e., that the note was endorsed to Chase on or before the date the lawsuit was filed). By contrast, if the evidence shows that the note was endorsed to Chase after the lawsuit was filed, then Chase had no standing at the time the complaint was filed, in which case the trial court should dismiss the instant lawsuit and Chase must file a new complaint." 79 So. 3d at 174-75.

In seeking to distinguish this case from *McLean*, FV-I relies primarily on *U.S. Bank NA v. McConnell*, 48 Kan. App. 2d 892, 906-07, 305 P.3d 1 (2013), which discussed *McLean* but concluded that a bank that held a promissory note at the time a foreclosure

16

suit was filed had standing, despite the formal assignment of the related mortgage being filed after the date of suit:

> "[E]ven if the interests of the note holder become separated from the interests of the mortgage holder, we see no impediment to a foreclosure action if those interests are subsequently reunited before judgment. The approaches used by the courts in Ohio and Florida in *CitiMortgage* and *JP Morgan Chase* discussed earlier are logical, practical, and consistent with our law. Under Kansas law the mortgage follows the note. *But any arguable severance of the note holder's interest from the mortgage holder's interest should be able to be cured with the transfer of the mortgage to the Bank, even if that occurs after suit was filed[,] so long as the transfer occurs before the Bank moves for summary judgment."* (Emphasis added.) 48 Kan. App. 2d at 907.

FV-I argues this language demonstrates it had to prove that it had standing only by the time of trial in this case. BOP persuasively responds that FV-I misreads *McConnell*, where the panel also held that "there is no genuine fact issue about the Bank being the holder of the note *at the time suit was filed* . . . the fact that the Bank held the promissory note was sufficient to give it standing to pursue this action." 48 Kan. App. 2d at 901. Additionally, BOP correctly distinguishes this case from *McConnell* because the Bank held the *note* with enforcement rights when the action was filed and was assigned the *mortgage* after suit was filed, the reverse factual situation of this case.

Apart from *McClean* and *McConnell*, several other jurisdictions agree with the panel in this case. "[T]here is broad agreement among courts that some sort of standing or similar status is necessary for both judicial and nonjudicial foreclosure . . . . There is also broad agreement that the party bringing the foreclosure action or sale *must have standing at the time the litigation . . . is commenced.*" (Emphasis added). Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title,* 63 Duke L.J. 637, 642-44 (2013).

17

The New Mexico Supreme Court has recognized this fact in *Deutsche Bank Nat. Trust Co. v. Johnston*, 2016-NMSC-013, 369 P.3d 1046 (N.M. 2016), a case that is helpful to our analysis of when a party must have standing. Deutsche Bank filed a foreclosure action with an unendorsed note and a mortgage that had been assigned to it prior to the filing of the complaint, but it possessed a version of the note endorsed in blank at trial. The court held this was insufficient to establish that standing existed at the time of filing. It explained the reasoning for requiring strict compliance with the traditional procedural requirement that standing be established at the time of filing in mortgage foreclosure actions:

> "This procedural safeguard is vital because the securitization of mortgages has given rise to a pervasive failure among mortgage holders to comply with the technical requirements underlying the transfer of promissory notes, and more generally the recording of interests in property. *See* Renuart, *Uneasy Intersections: The Right to Foreclose and the U.C.C.*, 48 Wake Forest L. Rev. 1205, 1209-10 (2013) ('[T]he failure to deliver the original notes with proper indorsements [to assignees], the routine creation of unnecessary lost note affidavits, the destruction of the original notes, and the falsification of necessary indorsements . . . is widespread.'). Under these circumstances, not even the plaintiffs may be sure if they actually own the notes they seek to enforce. . . . These formalities are strengthened by strict standing requirements. Otherwise, institutions could potentially cloud title by foreclosing on a property upon which they do not possess the right to foreclose.

> "{ 22} Indeed, standing in foreclosure actions 'is not a mere procedural detail'; it protects homeowners against double liability such as 'when the wrong party sells the home and the note holder later appears seeking full payment on the note,' or when a homeowner faces multiple lawsuits in different jurisdictions. Renuart, *supra*, at 1212. . . . In other words, requiring that standing be established as of the time of filing provides strong and necessary incentives to help ensure that a note holder will not proceed with a foreclosure action before confirming that it has a right to do so." *Johnston*, 369 P.3d at 1053-54.

18

The *Johnston* court cited several cases from other jurisdictions, including *McConnell*, which require a foreclosure plaintiff to prove that it was entitled to enforce the note when it filed suit. 369 P.3d at 1054. See, *e.g.*, *Fed. Home Loan Mortgage Corp. v. Schwartzwald,* 2012–Ohio–5017, ¶ 26, 134 Ohio St. 3d 13, 979 N.E.2d 1214 (2012) (post-filing events that supply standing that did not exist on filing may be disregarded . . . despite a showing of sufficient present injury caused by the challenged acts and capable of judicial redress); *Deutsche Bank Nat'l Tr. v. Brumbaugh,* 2012 OK 3, ¶ 11, 270 P.3d 151 (2012) (plaintiff's initial lack of standing could not be cured, even if entitled to enforce the note after the case was filed, and proper remedy was to dismiss the case without prejudice); *McLean,* 79 So.3d at 173 (party's standing is determined at the time the lawsuit was filed and lack of standing cannot be cured); *Deutsche Bank Nat'l Tr. Co. v. Mitchell,* 422 N.J. Super. 214, 221-25, 27 A.3d 1229, (2011) (plaintiff must have standing at the time the foreclosure complaint is filed, and a lack of standing cannot be cured by showing that a plaintiff acquired standing after the complaint was filed); *Wells Fargo Bank, N.A. v. Marchione,* 69 A.D.3d 204, 205-07, 887 N.Y.S.2d 615 (2009) (noting that a plaintiff-assignee lacked standing where the note and mortgage were assigned to the plaintiff after commencement of the foreclosure action); *U.S. Bank Nat'l Ass'n v. Kimball,* 2011 VT 81, ¶¶ 12-20, 190 Vt. 210, 27 A.3d 1087 (it did not contravene the interest of judicial efficiency to dismiss the complaint of a foreclosure plaintiff who acquired standing after the complaint had been filed).

With these considerations and relevant caselaw in mind, the *Johnston* court continued in relevant part:

> "As a result, we conclude that it is not presumptuous to require, as do a substantial number of other states, that a company claiming to be a mortgage holder must produce proof that it was entitled to enforce the underlying promissory note prior to the commencement of the foreclosure action by, for example, attaching a note containing an undated indorsement to the initial complaint or producing a note dated before the filing of the complaint at some appropriate time in the litigation. We agree with the Vermont

Supreme Court, which opined that '[i]t is neither irrational nor wasteful to expect a foreclosing party to actually be in possession of its claimed interest in the note, and have the proper supporting documentation in hand when filing suit.' *Kimball,* 2011 VT 81, ¶ 20.

. . . .

". . . [T]his is an issue of proof rather than pleading standards. The elements of standing

'are not mere pleading requirements but rather an indispensable part of the plaintiff's case, [and therefore] each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'

*Lujan,* 504 U.S. at 561. For example, a foreclosure plaintiff may satisfy pleading requirements by simply alleging that it is the holder of the note without attaching any additional documentary evidence, but when a defendant subsequently raises the defense that the plaintiff lacks standing to foreclose, the plaintiff must then prove that it held the note *at the time of filing.* Attaching the note to the complaint is not the only means of proving that the plaintiff held the note at the time of filing because standing can also be proven through a dated indorsement establishing when the note was indorsed to the plaintiff. Therefore, neither *Bank of New York* nor the Court of Appeals' opinion in this case establish an additional pleading requirement, as Deutsche Bank argues, but rather set forth requirements that must be met to prove standing, should that issue be raised by the defendant or *sua sponte* by the Court." *Deutsche Bank*, 369 P.3d at 1054-56.

We agree with the sound reasoning of the *Deutsche Bank* court and hold that standing in a foreclosure action is predicated on the plaintiff's ability to demonstrate—either in the pleadings, upon motion for summary judgment, or at trial—that it was in possession of the note with enforcement rights at the time it filed the foreclosure action. Allowing a lack of standing to be cured by a post-petition assignment granting enforcement rights in the note after the foreclosure action has been filed would defeat any incentive for a note holder to ensure that it has enforcement rights prior to filing the action.

20

FV-I's reliance on *McConnell* for this premise is misplaced because, unlike this case, the plaintiff unequivocally had enforcement rights in the *note* prior to filing the petition. 48 Kan. App. 2d at 901.

*Exclusion of Endorsements on Note*

Before addressing whether FV-I in fact established standing as of the time of filing, we pause to address a district court evidentiary ruling related to our analysis. The district court admitted the original note at trial but excluded the two additional endorsements that were stamp signatures. The district court applied the business records exception to the hearsay rule and excluded the endorsements based on FV-I's alleged failure to lay a proper foundation. K.S.A. 2016 Supp. 60-460(m) provides:

> "Writings offered as memoranda or records of acts, conditions or events to prove the facts stated therein, if the judge finds that (1) They were made in the regular course of a business at or about the time of the act, condition or event recorded and (2) the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness."

This ruling was erroneous because the signatures were not being admitted to prove the truth of the matter asserted, *i.e.* the authenticity of the signatures. See *In re Phillips,* 491 B.R. 255, 271-72 (Bankr. D. Nev. 2013) ("the significance of an endorsement is that it was made, not that the words used are themselves true"). Rather, the existence of the endorsements themselves was the element critical to the enforcement rights at issue under the UCC.

Under the UCC, a "holder" includes "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." K.S.A. 2016 Supp. 84-1-201(a)(21)(A). And K.S.A. 84-3-205(a) and (b)

21

recognize two types of endorsements: (1) a special endorsement, which is an endorsement made to an "identified person" or "payable to bearer" and is payable to the identified person; and (2) a blank endorsement, which is not a special endorsement and is payable to bearer.

The UCC treats stamp signatures as equal to original signatures. See K.S.A. 84-3-401(b) ("A signature may be made (1) manually or by means of a devise or machine.") K.S.A. 84-3-308 creates a presumption that signatures are authentic:

> "[T]he authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature."

Comment 1 to K.S.A. 84-3-308 elaborates on the presumption afforded to signatures:

> "'Presumed' is defined in Section 1-201 and means that *until some evidence is introduced which would support a finding that the signature is forged or unauthorized, the plaintiff is not required to prove that it is valid*. The presumption rests upon the fact that in ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of, or more accessible to, the defendant. *The defendant is therefore required to make some sufficient showing of the grounds for the denial before the plaintiff is required to introduce evidence.* The defendant's evidence need not be sufficient to require a directed verdict, but it must be enough to support the denial by permitting a finding in the defendant's favor. Until introduction of such evidence the presumption requires a finding for the plaintiff." (Emphasis added).

This presumption applies to endorsements as well. See 6B Anderson on the UCC §3-308:5R (3d ed. 2016) ("The requirement of specifically denying the genuineness of a

22

signature applies not only to the signature of the obligor sought to be held liable but also to the signatures of any indorsers in the chain of title.").

Therefore, a defendant has the burden to present sufficient evidence denying an endorsement's validity before a plaintiff is required to introduce evidence to the contrary. See K.S.A. 84-3-308; *King v. Bellamy*, 82 Kan. 301, 303, 108 P. 117 (1910) (everything is presumed to be done rightly until the contrary be proved); see also 6B Anderson on the UCC § 3-308:8R (3d ed. 2016) ("The presumption requires a finding that the signature is genuine or authorized unless and until the obligor has introduced sufficient evidence to support a finding to the contrary.").

In this case, the endorsements on the original note should have been presumed valid unless BOP proved otherwise. BOP's "evidence" against the endorsement was: (1) the original note was not attached to the original petition; (2) 4 months into the case FV-I was still relying on the older version of the note; (3) FV-I could not explain how or when the allonge came to be; and (4) FV-I had argued inconsistent legal positions regarding its ability to enforce the note. But, none of these assertions amounts to actual evidence that the signatures were forged or unauthorized.

Mere speculation based on FV-I's inconsistent legal positions or the timing of its assertions was insufficient to meet BOP's burden. The district court erred as a matter of law by failing to apply the presumption of validity to the endorsements under K.S.A. 84-3-308 and by applying K.S.A. 60-460(m) separately to the note and then again to the endorsements.

Under K.S.A. 84-3-308(b), once the validity of the signature is admitted, a plaintiff producing a promissory note is entitled to payment so long as plaintiff is the holder of the note and unless the defendant provides a defense. On default of a validly executed mortgage given to secure a loan on real estate, the payee is entitled to judgment

23

for the amount due on its note and for foreclosure of its mortgage on the real estate securing the note. See *Daniels v. Army National Bank,* 249 Kan. 654, 660-61, 822 P.2d 39 (1991).

Despite our holding, no evidence was presented that FV-I actually possessed the note with the endorsement in blank at the time the petition was filed in this case. However, review of the record suggests that the exclusion of the note with its endorsements may have hindered FV-I from establishing this at trial.

*Effect of Erroneous Exclusion of Endorsements*

Chatfield testified that in January 2012, he became an asset manager for AMS, which services the loans for FV-I, the trustee of Morgan Stanley Mortgage Capital Holdings, the investor that purchased the Kallevig loans. Chatfield explained that Saxon Mortgage serviced the loan on June 24, 2011, when this case was filed, and AMS had access to its records. Chatfield apparently was not 100 percent sure how FV-I acquired the Kallevig loan. When asked when FV-I purchased the loan, Chatfield stated, "I believe it was 2010." When asked if FV-I had access to the original documents, Chatfield responded, "I believe they do."

Chatfield testified that FV-I possessed the original note through its custodian, Wells Fargo:

"Q. Okay. And I've previously represented to you that FV-I filed this foreclosure case on June 24, 2011. Do you know if FV-I possessed that original note on or before that date?

"A. Yes, they would have had it with the custodian (Wells Fargo)."

24

The district court clarified that the document they were referring to was the original note that had been admitted into evidence but that the last two endorsements had been excluded.

On cross-examination, Chatfield reiterated that he knew FV-I took over the loan in 2010 through the comment history in the file he received from Saxon, but he did not have written documentation of that fact at trial. The following relevant exchange occurred:

"Q. But my question was, you don't have any knowledge of any agreements being made between GMACB and GMAC Bank about transfers of the Kallevig note and mortgage that preceded January of 2012?

"A. Other than the endorsements on the note, no.

"Q. Endorsements on what note?

"A. The original note.

"Q. The original note that shows an endorsement to GMACB?

"A. And it shows two other endorsements on the bottom, correct.

"Q. Those endorsements aren't part of the record. You understand. You've been here.

"A. Okay.

"Q. If GMAC Bank and GMACB made agreements prior to January of 2012 about transfers of the note and mortgage, you wouldn't have been involved in that.

"A. That is correct.

25

Subsequently, the following exchange also occurred between BOP's counsel and Chatfield:

"Q. (By Mr. Girard) We looked at a note that had some stamped endorsements [but] those aren't part of the record anymore. . . . [A]m I right so far?

"A. That's correct.

"Q. GMAC Bank didn't endorse the promissory note to FV-I, right?

"A. Correct.

"Q. Do you have any other theories by which FV-I might claim it got enforcement rights in the promissory note?

"A. They bought the loan in 2010.

"Q. Buying the loan is enough?

"A. It should have been endorsed to FV-I, or it should have been endorsed to the entity buying the loan.

"Q. Do you have any knowledge of any of those types of endorsements you just described?

"A. I don't have a copy of those, no."

Review of the record demonstrates that FV-I's witness was unable to fully answer questions surrounding the timing of FV-I's acquisition of the promissory note because he was unable to discuss the improperly excluded endorsements. As we cannot definitively ascertain whether Chatfield *would* have testified that FV-I possessed the original note

with the excluded endorsement in blank *when* the petition was filed, we are compelled to remand for a hearing on this matter, as discussed more below.

*Mortgage Alone to Establish Standing*

FV-1 alternatively argues that it had standing to foreclose because it possessed the mortgage when it filed the petition. See *Bank of New York Mellon v. Grund*, 2015-Ohio-466, 27 N.E.3d 555, 559 (Ohio App. 2015) (mortgage lender must establish an interest in the promissory note *or* the mortgage in order to have standing to invoke the jurisdiction; *U.S. Bank, N.A. v. Tomlinson*, No. 111,081, 2014 WL 4627608, at *4 (Kan. App. 2014) (unpublished opinion) ("[E]ven if we are incorrect about the note itself establishing U.S. Bank as the valid holder of the note, the fact U.S. Bank is the valid mortgage holder also makes it the holder of the debt."), *rev. denied* 302 Kan. 1022 (2015); *U.S. Bank v. Massey*, No. 109,902, 2014 WL 4080115, at *4 (Kan. App. 2014) (unpublished opinion)("U.S. Bank produced an assignment of the mortgage that, both by the terms of the assignment and by statute [58-2323], carried the note with it.").

This argument hinges in part on the interplay between the common law idea that the mortgage follows the note and statutory language suggesting the debt follows the mortgage. In 1870, this court recognized that "the mortgage is but appurtenant to the debt—a mere security; and, under ordinary circumstances, whoever owns the debt owns the mortgage. . . . An assignment of the debt ordinarily carries the mortgage with it." *Kurtz v. Sponable*, 6 Kan. 395, 397 (1870). However, in 1899, the legislature passed the predecessor of K.S.A. 58-2323, which provides conversely: "The assignment of any mortgage as herein provided shall carry with it the debt thereby secured." L. 1899, ch. 168, sec. 5.

In *U.S. Bank NA v. McConnell*, 48 Kan. App. 2d 892, 305 P.3d 1 (2013), the Court of Appeals addressed whether a post-petition assignment of the mortgage was sufficient

27

to give the note holder standing to foreclose. The panel acknowledged K.S.A. 58-2323 and reviewed caselaw concerning whether the mortgage followed the note so that a holder of the note without the mortgage could have standing to foreclose:

"Kansas has long held that the holder of the note is also the holder of the mortgage securing it. In *Anthony v. Brennan,* 74 Kan. 707, 87 P. 1136 (1906), the plaintiff obtained an assignment of the mortgage from one, but not all, of the mortgagees before filing a foreclosure action. The mortgagor claimed the plaintiff lacked standing, and the plaintiff's later efforts to obtain assignments from the remaining mortgagees did not cure the standing defect that existed at the time suit was filed. In rejecting the mortgagor's argument, the court cited *O'Keeffe v. National Bank,* 49 Kan. 347, 30 P. 473 (1892), in which the court held that 'the title to a note and the mortgage securing its payment passed by delivery, and that the possession of the instruments and their production at the trial by the plaintiff furnished *prima facie* evidence of his ownership.' *Anthony,* 74 Kan. at 708-09.

"In *Middlekauff v. Bell,* 111 Kan. 206, 207, 207 P. 184 (1922), our Supreme Court held: " 'An assignment of a mortgage is merely a formal transfer of title to the instrument, and the assignment from the bank to the plaintiff was admittedly good for that purpose. The plaintiff, however, did not need the assignment in order to invest her with ownership of the mortgage. She acquired full title by purchase of the note which it secured, and the assignment may be excluded from consideration without prejudice to her lien.'

"The court reasoned:

"'The mortgage is a mere security, creating a lien upon the property, but vesting no title. The debt secured by the mortgage is the principal thing, and the mortgage the mere incident following the debt wherever it goes, and deriving its character from the instrument which evidences the debt."' 111 Kan. at 208.

28

Further, the *Middlekauff* court quoted *Insurance Co. v. Huntington,* 57 Kan. 744, Syl. ¶ 1, 48 P. 19 (1897): "'The assignment and delivery of a negotiable promissory note before maturity operates as an assignment of a mortgage given as security for the payment of the note.'" 111 Kan. at 209.

"In a case with disparate facts, *Army Nat'l Bank v. Equity Developers, Inc.,* 245 Kan. 3, 17, 774 P.2d 919 (1989), the court reaffirmed this notion by stating: 'Our view is that the mortgage follows the note. A perfected claim to the note is equally perfected as to the mortgage.'

"Likewise, in *MetLife Home Loans v. Hansen,* 48 Kan. App. 2d 213, Syl. ¶ 5, 286 P.3d 1150 (2012), a panel of our court held that the mortgage follows the note when it stated: 'The transfer of an obligation or debt secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise.' Further: 'Kansas law favors keeping the mortgage and the right of the enforcement of the obligation it secures in the hands of the same person or entity.' 48 Kan. App. 2d 213, Syl. ¶ 6.

"Finally, Restatement (Third) of Property (Mortgages) § 5.4(a) (1996) provides: 'A transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise.'

"This approach is consistent with the reality of modern residential lending practices, in which the lender or a later holder of the note ordinarily does not look to the borrower's financial ability to satisfy a money judgment in the event of default on the note, but rather to the value of the home which stands as collateral for the debt. That was the case here, where the Bank did not seek a personal judgment against Steven but only sought to foreclose on the residence which stood as collateral for the loan.

"Because the mortgage followed the note and there is no genuine fact issue about the Bank being the holder of the note at the time suit was filed, we conclude that the Bank had standing to pursue this foreclosure action." 48 Kan. App. 2d at 900-01.

A closer review of Restatement (Third) of Property (Mortgages) § 5.4 and its comments provide further guidance. Restatement (Third) of Property (Mortgages) §

29

5.4(a) provides: "A transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise." Comment a provides:

> "The essential premise of this section is that it is nearly always sensible to keep the mortgage and the right of enforcement of the obligation it secures in the hands of the same person. This is so because separating the obligation from the mortgage results in a practical loss of efficacy of the mortgage . . . . When the right of enforcement of the note and the mortgage are split, the note becomes, as a *practical matter*, unsecured." (Emphasis added.) Restatement § 5.4, comment a.

Restatement (Third) of Property (Mortgages) § 5.4(b) provides: "Except as otherwise required by the Uniform Commercial Code, a transfer of a mortgage also transfers the obligation the mortgage secures unless the parties to the transfer agree otherwise." Comment b provides:

> "A transfer in full of the obligation automatically transfers the mortgage as well unless the parties agree that the transferor is to retain the mortgage. The objective of this rule, as noted above, is to keep the obligation and the mortgage in the same hands unless the parties wish to separate them. This result is sometimes justified on the ground that "'[a]ll the authorities agree that the debt is the principal thing and the mortgage an accessory.'" Restatement (Third) of Property (Mortgages) § 5.4 comment b (quoting *Carpenter v. Longan*, 83 U.S. (16 Wall.) 271, 21 L. Ed. 313 [1872]).

Restatement (Third) of Property (Mortgages) § 5.4(c) states: "A mortgage may be enforced only by, or on behalf of, a person who is entitled to enforce the obligation the mortgage secures." Comment c provides:

> "It is possible for a mortgagee to assign the mortgage while retaining full ownership of the obligation, but only if the parties so agree. . . . *The practical effect of such a transaction is to make it impossible to foreclose the mortgage*, unless the

transferee is also made an agent or trustee of the transferor or otherwise has authority to foreclose in the transferor's behalf." (Emphasis added) Restatement § 5.4 comment c.

Comment e notes that courts should be "vigorous" in seeking to find the sort of relationship outlined in comment c that would allow a split mortgage/note to be foreclosed.

In *Landmark Nat. Bank v. Kesler*, 289 Kan. 528, 539-40, 216 P.3d 158 (2009), we recognized the possibility that a mortgage and note could split and the subsequent effect on the mortgage:

"The relationship that MERS has to Sovereign is more akin to that of a straw man than to a party possessing all the rights given a buyer. A mortgagee and a lender have intertwined rights that defy a clear separation of interests, especially when such a purported separation relies on ambiguous contractual language. The law generally understands that a mortgagee is not distinct from a lender: a mortgagee is '[o]ne to whom property is mortgaged: the mortgage creditor, or lender.' Black's Law Dictionary 1034 (8th ed. 2004). *By statute, assignment of the mortgage carries with it the assignment of the debt. K.S.A. 58-2323.* Although MERS asserts that, under some situations, the mortgage document purports to give it the same rights as the lender, the document consistently refers only to rights of the lender, including rights to receive notice of litigation, to collect payments, and to enforce the debt obligation. The document consistently limits MERS to acting 'solely' as the nominee of the lender.

"*Indeed, in the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable.*

"'The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note. [Citation omitted.] Without the agency relationship, the person

31

holding only the note lacks the power to foreclose in the event of default. *The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation*. [Citation omitted.] The mortgage loan becomes ineffectual when the note holder [does] not also hold the deed of trust.' *Bellistri v. Ocwen Loan Servicing, LLC,* 284 S.W.3d 619, 623 (Mo. App. 2009)." (Emphasis added.)

K.S.A. 58-2323, Kansas caselaw, and the Restatement thus work to keep the note and mortgage together based on the intent of the transferring parties. See *MetLife Home Loans* v. *Hansen*, 48 Kan. App. 2d 213, 224, 286 P.3d 1150 (2012) (Kansas law favors keeping the mortgage and the right of the enforcement of the obligation it secures in the hands of the same person or entity.). While this may be important in a case where there is a dispute between the transferor/transferee, or where there is a cloud over who possesses the mortgage, it is immaterial in this case where enforcement rights in the *note* are necessary to demonstrate a default that gives rise to the power to foreclose on the mortgage.

In this case, BOP stipulated at oral argument that FV-I possessed the original note and mortgage at trial. While we acknowledged the possibility that a mortgage and note could split in *Landmark*, the emphasized language above suggests that while a split is a possibility, it would be rare or an exception. The *Kallevig II* panel seemed to accept the premise that the note and the mortgage had split in this case in ruling on BOP's counterclaim. Regardless of whether the note and mortgage had split in this case, a person or entity possessing *only* the mortgage would never experience the cognizable injury*, i.e.,* the default necessary to foreclose the mortgage. Thus, despite K.S.A. 58-2323, FV-I's possession of the mortgage alone without demonstrating enforcement rights in the note is insufficient to establish standing in a mortgage foreclosure proceeding.

32

*Standing Application to this Case*

In summary, in order for a plaintiff to prevail in its mortgage foreclosure proceeding, it must establish both that it possessed enforcement rights in the note under Article 3 of the UCC, K.S.A. 84-3-301, and that those rights existed at the time it filed the action. This can be accomplished either through the pleadings, when faced with a motion for summary judgment, or at trial. Possession or assignment of the mortgage alone when the foreclosure action is filed is not sufficient to establish standing, and the lack of standing cannot be cured by a post-petition assignment of a promissory note. The proper remedy for a lack of standing is dismissal without prejudice.

In this case, the district court and the *Kallevig I* and *II* panels correctly recognized that enforcement rights must be possessed by the plaintiff when the foreclosure action is filed. However, the district court erroneously excluded the last two endorsements on the original note that FV-I attempted to present at trial. At this point FV-I had possession of the original promissory note endorsed in blank and the mortgage; however, it had not established that it had possession of the original promissory note *when* it filed the foreclosure petition.

The Court of Appeals held that even if the note showing the last two endorsements was admitted by the district court, "it would not have cured FV-I's lack of standing." 2015 WL 717776, at *6. We disagree that this is certain from the current state of the record. Chatfield's inability to rely upon the endorsements when discussing how FV-I obtained enforcement rights in the note leaves open the possibility that he could have established *when* FV-I acquired possession of the note to demonstrate standing to foreclose. Accordingly, we remand for a new hearing on whether FV-I possessed the original note with the improperly excluded endorsements when the petition to foreclose was filed.

33

In so holding, we necessarily vacate the district court's ruling that BOP should be given lien priority, subject to the district court's evaluation of the standing issue on remand. In the event the district court again holds FV-I did not have standing when it filed its foreclosure petition, we offer some additional guidance concerning BOP's remaining counterclaim to establish priority.

*Priority Determination*

In granting the original summary judgment motion, the district court ruled that the note and the mortgage had split, that the parties had agreed to the split, and that BOP's mortgages were thus superior to the mortgage held by FV-I. On appeal, the *Kallevig I* panel held there was no evidence the parties intended to split the mortgage and note:

> "FV-I was not the original holder of the note; it was a subsequent assignee of the original
> lender, GMAC Bank. Likewise, MERS assigned the mortgage to FV-I 'as the nominee of
> GMAC Bank.' Because MERS is simply a 'straw man' and the mortgage and the note in
> this case reference one another, it is clear the parties intended for the instruments to
> remain together. There is no evidence in the record of an expressed agreement to split the
> note and the mortgage." 2013 WL 2321198, at *4.

BOP did not petition for review from this decision; however, BOP continued to argue on remand that there was a split, despite not offering any additional evidence of it. On remand, the district court nevertheless addressed the issue and again held that GMAC Bank split the note and mortgage. Specifically, it held GMAC assigned the note to GMACB on November 15, 2008, without simultaneously assigning the mortgage to GMACB, and GMAC then later assigned the mortgage to FV-I. The district court held this was evidence that GMAC did not intend to assign the mortgage to GMACB.

34

In the second appeal, the *Kallevig II* panel held that it was not addressing the district court's holding that the note and the mortgage split although its reasoning regarding the mortgage being unenforceable suggests otherwise:

> "the record reflects the mortgage was assigned by MERS to FV-I, and FV-I failed to show the note was in its possession or was timely assigned to FV-I to initiate the foreclosure. FV-I's failure to establish enforcement rights in the note makes the mortgage unenforceable. With FV-I's mortgage unenforceable, there is no longer a mortgage for BOP's mortgages to be subordinate to. Thus, the district court did not err in finding FV-I's mortgage lost its superior priority to BOP's mortgages." 2015 WL 717776, at *6.

The *Kallevig II* panel's holding that the mortgage was unenforceable appears to be based on our *Landmark* decision. 289 Kan. at 540 ("in the event that a mortgage loan somehow separates interests of the note and the deed of trust . . . the mortgage may become unenforceable"). However, the panel overreads our *Landmark* decision, where we were addressing whether MERS was a necessary party to the action. We did not address the effect of a split on the priority of the mortgages or whether a separated note and mortgage could later be reunited. In short, our *Landmark* decision never held that a mortgage not currently capable of being enforced by the assignee no longer exists. Regardless of whether a split occurred or the party capable of enforcing the note was not a party to this case, the mortgage itself still exists.

This case presents a unique procedural posture as the property sought to be foreclosed upon has already been sold and the proceeds placed into escrow pending a priority determination. On remand, after making its ruling on standing, the district court should make a priority determination using Kansas' existing law on the subject. See K.S.A. 58-2221; K.S.A. 58-2222; K.S.A. 58-2223; see also *Bank Western v. Henderson*, 255 Kan. 343, 348, 874 P.2d 632 (1994) (general rule is that first to record a mortgage has priority; priority continues as long as mortgage is not released).

35

Affirmed in part, reversed in part, and remanded to the district court for a new hearing consistent with this opinion.